1  BLECHER COLLINS PEPPERMAN & JOYE, P.C.
   Maxwell M. Blecher (State Bar No. 26202)
2  mblecher@blechercollins.com
   Courtney A. Palko (State Bar No. 233822)
3  cpalko@blechercollins.com
   515 South Figueroa Street, Suite 1750
4  Los Angeles, California 90071-3334
   Telephone: (213) 622-4222
5  Facsimile: (213) 622-1656

6  Attorneys for Plaintiff
   NOVATION VENTURES, LLC

7

8

9              UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12 NOVATION VENTURES, LLC,              Case No. 2:15-cv-00954

13          Plaintiff,                  **COMPLAINT FOR DAMAGES
                                        AND INJUNCTIVE RELIEF FOR:**
14     vs.
                                            **VIOLATION OF SECTION 7
15 THE J.G. WENTWORTH COMPANY,              OF THE CLAYTON ACT AND
   LLC, a Delaware limited liability         SECTION 2 OF THE
16 company, formerly known as JGWPT          SHERMAN ACT**
   HOLDINGS, LLC; THE J.G.
17 WENTWORTH  COMPANY, a
   Delaware corporation, formerly known  **[DEMAND FOR JURY TRIAL]**
18 as JGWPT, INC.; J.G. WENTWORTH
   S.S.C. Limited Partnership, a Nevada
19 limited partnership; and PEACH
   HOLDINGS, LLC, a Delaware limited
20 liability company dba PEACHTREE
   FINANCIAL SOLUTIONS,
21
            Defendants.
22

23

24

25

26

27

28

Plaintiff, demanding trial by jury, complains and alleges as follows:

## I.

## <u>JURISDICTION AND VENUE</u>

1.     This Complaint sets forth claims under the antitrust laws to recover damages pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15) and to secure injunctive relief pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26) for Defendants' violations of Section 2 of the Sherman Act (15 U.S.C. § 2) and Section 7 of the Clayton Act (15 U.S.C. § 18) against Defendants The J.G. Wentworth Company, LLC; The J.G. Wentworth Company; J.G. Wentworth S.S.C. Limited Partnership; and Peach Holdings, LLC.

2.     Each Defendant transacts business and is found within the Central District of California.

## II.

## <u>PARTIES</u>

3.     Plaintiff Novation Ventures, LLC ("Novation") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 1641 Worthington Road West, Palm Beach, Florida 33409.  Novation is engaged in the business of factoring structured settlement payment rights by buying the right to receive scheduled future payments from settlement recipients who do not wish to or cannot wait years for their annuitized payments.

4.     Defendant The J.G. Wentworth Company, LLC, formerly known as JGWPT Holdings, LLC ("JGWPT Holdings"), is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 201 King of Prussia Road, Suite 200, Radnor, Pennsylvania 19807.  Defendant The J.G. Wentworth Company, formerly known as JGWPT, Inc. ("JGWPT"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business also at 201 King of Prussia Road,

Suite 200, Radnor, Pennsylvania 19807.  Hereinafter, both The J.G. Wentworth Company business entities will be referred to individually and collectively as JG Wentworth, one of several brand names used by Defendants in their advertising on television and the Internet.  JG Wentworth is by far the largest participant in the factoring of structured settlements, with about 75% of the U.S. market.  Like Novation, JG Wentworth is engaged in the business of factoring structured settlement payment rights by buying the right to receive scheduled future payments from consumers who do not wish to or cannot wait years for their annuitized settlement.

5.      Defendant Peach Holdings, LLC, dba Peachtree Financial Solutions, ("Peachtree") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business now located at the same Radnor, Pennsylvania address as Defendant JG Wentworth.

6.      Defendant J.G. Wentworth S.S.C. Limited Partnership, a Nevada limited partnership with its principal place of business at the same Radnor, Pennsylvania address as Defendant JG Wentworth, is the record owner of the federal trademarks: "Peachtree Financial Solutions," "The JG Wentworth Company," and "JGWPT Holdings," and is wholly controlled by Defendant JG Wentworth.

7.      Prior to its acquisition of Peachtree in August 2011, JG Wentworth had been Peachtree's largest competitor, funding 40-45% of the structured settlement factoring transactions completed in the United States annually.  JG Wentworth would broadcast television ads and compete with Peachtree for on-screen "shelf space" and position in pay-per-click Internet advertising.  Most importantly, prior to the 2011 merger, individual consumers considering Peachtree could solicit and receive bids from JG Wentworth for their structured settlement payments and have the two companies compete on price.

8.      Prior to its acquisition by JG Wentworth in August 2011, Peachtree had

1   been JG Wentworth's largest competitor, funding 25-30% of the structured

2   settlement factoring transactions completed in the United States annually.  Peachtree

3   would broadcast television ads and compete with JG Wentworth for on-screen

4   "shelf space" and position in pay-per-click Internet advertising.  Most importantly,

5   prior to the 2011 merger, individual consumers considering JG Wentworth could

6   solicit and receive bids from Peachtree for their structured settlement payments and

7   have the two companies compete on price.

8        9.    JG Wentworth acquired Peachtree in August 2011.  Thereafter, JG

9   Wentworth terminated nearly all of Peachtree's employees engaged in the structured

10  settlement factoring business and relocated a handful of surviving employees to JG

11  Wentworth's Radnor, Pennsylvania headquarters.  Since the merger, JG Wentworth

12  has controlled Peachtree branding, advertising, marketing, product offerings, and

13  transaction pricing.

14       10.   Google, Inc. ("Google"), not named as a party defendant herein, has, as

15  a non-party, collaborated with and aided and abetted the named Defendants in their

16  activities, which violate Section 2 of the Sherman Act, and has taken actions in

17  furtherance of those activities.

18       11.   Google is a corporation organized and existing under the laws of the

19  State of Delaware with its principal place of business at 1600 Amphitheatre

20  Parkway, Mountain View, California 94043.  Google, among other things, offers the

21  dominant online search engine, allowing consumer users to find information on the

22  Internet and is the primary means the public uses for seeking information about the

23  factoring of structured settlements and finding purchasers for their structured

24  settlement payments.

25       12.   A substantial fraction of Google's revenue is derived from its sale of

26  paid listings in Google's online search results.  Every moment of every day,

27  commercial advertisers bid to display their ads in the search results shown to those

28  who use the Google online search engine to find information about a designated

Blecher Collins
Pepperman & Joye

1   search term.  Google calls this business "AdWords."

2        13.   Google operates its AdWords advertising business as a dynamic on-

3   line auction in which competing businesses bid against one another to pay Google a

4   "per click" fee whenever (a) a Google user seeks information about a designated

5   search term, (b) the advertiser's listing is displayed, and (c) the user "clicks" on the

6   displayed listing, thereby taking the user to the advertiser's website or phone

7   number.  All other things being equal, the higher the ranking of a search result on a

8   user's desktop computer or mobile phone screen, the more likely it is that the user

9   will consider and "click on" that listing.  Thus, advertisers using the AdWords

10  system compete with one another to achieve a relatively higher position in Google's

11  "paid search" rankings, bidding more to achieve a higher ranking.  Depending on

12  the category of good or service advertised, region, time of day, and other factors, a

13  single "click" on AdWords may cost as little as a few pennies or as much as five

14  hundred dollars

15       14.   Since the August 2011 merger between JG Wentworth and Peachtree,

16  Google has accepted at least $10 million and perhaps as much as $20 million in pay-

17  per-click fees from JG Wentworth or its subsidiaries in consideration for directing

18  internet users to websites and/or phone numbers managed and controlled by JG

19  Wentworth brands including both "JG Wentworth" and "Peachtree."

20                                    **III.**

21        **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

22  A.    **The Acquisition**

23       15.   In or about August 2011, within the past four years, Defendant JG

24  Wentworth acquired the business and assets of Defendant Peachtree.  Post-merger,

25  the two brands (JG Wentworth and Peachtree) operate under common ownership,

26  and management (JGWPT Holdings) and are based together at the same address at

27  201 King of Prussia Road, Suite 200, Radnor, Pennsylvania 19807.  Together, JG

28  Wentworth and Peachtree are by far the largest single player in the structured

Blecher Collins
Pepperman & Joye

1  settlement factoring business, controlling about 75% of the market. The merger,
2  combining the two largest competitors and affording the surviving entity or entities
3  a monopoly market share, standing alone, violates section 7 of the Clayton Act (15
4  U.S.C. § 18). Coupled with their subsequent conduct, as set forth below, JG
5  Wentworth and Peachtree also violate the attempt to monopolize, conspiracy to
6  monopolize, and monopolization clauses of Section 2 of the Sherman Act (15
7  U.S.C. § 2). It is estimated that JG Wentworth and Peachtree account for at least
8  75% of the structured settlement factoring industry's revenues and profits.

9  **B.**    **Nature of Trade and Commerce**

10      16.    The relevant product market in these antitrust claims is the factoring of
11  structured settlement payment rights. The relevant geographic market is the United
12  States.

13      17.    There are only a handful of companies competing for the factoring of
14  structured settlement payment rights in the United States. Post-merger, JG
15  Wentworth is by far the largest, with a market share of about 75%. Novation has a
16  market share believed to be no more than 7%.

17      18.    JG Wentworth (whether branded as JG Wentworth or as Peachtree)
18  buys the right to receive scheduled future payments from the persons for whose
19  benefit a structured settlement has been arranged, but who do not wish to or cannot
20  wait years for the annuitized settlement. The factoring company pays the consumer
21  cash up-front and, in exchange, receives the consumer's right to receive some or all
22  of their future settlement payments. Typically, a consumer will sell only a part of
23  their future payments to raise cash for a specified need. Some structured settlement
24  recipients will, over time, enter into multiple factoring arrangements over a period
25  of years, each time selling different fractions of different specified future payments
26  to one or more purchasing companies.

27      19.    In the structured settlement factoring business, what is bought and sold
28  is different in each transaction. There are no posted or standard prices or rates

Blecher Collins
Pepperman & Joye

1   published.  The size of the funding; the credit rating of the annuity issuer; prevailing

2   interest rates at the time of the transaction; and the duration of the cash flow being

3   bought and sold all can be factors in determining discount rate and price.

4   Accordingly, pricing in each transaction is the result of individualized "negotiation"

5   between buyer and seller – with price often influenced by whether the consumer-

6   seller has "shopped" and/or received genuinely competitive bids.

7        20.     A very large number and a high percentage of all structured settlement

8   factoring transactions take place in California and are submitted by each of the

9   parties (Novation, JG Wentworth, and Peachtree) to superior courts of the State of

10  California for review and approval in accordance with California Insurance Code §§

11  10134 – 10139.5.

12       21.     In each petition to approve a proposed transfer of structured settlement

13  payment rights, a superior court judge is asked to find that the proposed transaction

14  is "fair" and in the selling consumer's "best interests."  In making that determination

15  and finding, many courts will assess the selling consumer's capacity to handle their

16  own affairs and give some weight to a seller's ability to "shop around" and/or

17  consider other options.  In that regard, courts may take some comfort in seeing that

18  while many of their sellers choose JG Wentworth, many others appear to choose

19  Peachtree.  What courts and consumers are ***not*** told is that JG Wentworth and

20  Peachtree are now one and the same: commonly owned and controlled; they pretend

21  to (but do not actually) compete with each other.

22       22.     Typically, individuals (or their advisors) seeking to find a buyer for

23  structured settlement payment rights will search the Internet using Google.  A

24  desktop computer user may be offered hundreds of pages of Google search results,

25  but only the top listings on the first page of results are likely to be reviewed and

26  "clicked" on.  If a mobile phone is used, the small screen offers room only for the

27  top two or three results, and users seeking competitive bids will investigate a couple

28  of the top listed companies.

-6-

*Blecher Collins*
*Pepperman & Joye*

23.     In the context of Google "pay-per-click" advertising, JG Wentworth's maintenance of two brands, each pretending to compete with the other, harms both consumers and genuine competitors such as Novation.  By coordinating their Google AdWords "pay-per-click" bidding and budgets, JG Wentworth and Peachtree are able to consistently grab two of the top three or four search listing results on many of the keywords used by consumers searching for structured settlement buyers.  This behavior crowds out competitors and/or drives up the cost of being in second or third position in any given search ranking, making it more difficult and expensive for Novation to be found by potential customers looking for genuinely competing offers.  And this behavior also harms consumers, who are led to believe they are shopping among competing alternatives, but really are not.

24.     Google continues to allow JG Wentworth and Peachtree to list themselves separately in the paid search results on the same keywords when in fact Google knows, or should know, that the two brands are commonly owned and controlled.

25.     Novation will be able to provide statistical evidence measuring or quantifying those instances where it was never contacted because of Google's dual listing of JG Wentworth and Peachtree, and Novation was required to pay more to have its Google ad listings seen.  With that evidence, Novation can provide a statistical basis for determining the number of transactions from which it has been excluded and a plausible method to estimate its actual lost profit damages.

26.     The root cause of these losses is the illegal 2011 merger which has, in turn, led to an unbroken chain of events, producing an anticompetitive scheme calculated to eliminate or reduce competition to JG Wentworth and its former (but now fake) "competitor" Peachtree.

27.     After the acquisition/merger described above, a common ownership and management entity, maintains and promotes both brands, running ads for both JG Wentworth and Peachtree as though they continue to be separate, competitive

1  entities when in fact they are commonly owned and managed.  It is this duplicity in

2  making it appear to the public that JG Wentworth and Peachtree are still competitors

3  that is a material part of the Sherman Act § 2 claim.

4       28.    By simultaneously bidding on the same key words (e.g., "cash for

5  structured settlement"), JG Wentworth and Peachtree have been able to "rig" the

6  Google pay-per-click bidding system.  This "rigging" has had two major

7  anticompetitive effects.  *First*, it has driven up the cost of being in the 1st, 2nd, or 3rd

8  position so as to effectively preclude or minimize the competitive impact of other

9  entrants – it is simply harder to gain prominent display if one big participant with a

10  75% market share is taking two of the three available positions visible on a small

11  mobile screen.  *Second*, and perhaps more importantly, JG Wentworth and Peachtree

12  are deceiving consumers in that structured settlement recipients seeking to shop

13  among competing structured settlement buyers might click on the one or two

14  displayed entities and not proceed further, believing – incorrectly – that when JG

15  Wentworth and Peachtree occupy these two positions, consumers are getting the full

16  benefits of competitive bidding.  Because JG Wentworth and Peachtree customer

17  databases and telephone systems are co-located and commonly owned and

18  controlled, JG Wentworth can know whether the consumer on the line already has

19  been in contact with Peachtree (and vice versa) and can calibrate its "pitch" and

20  bidding accordingly.  And when a potential customer (unaware of the two brands'

21  common ownership) tells a Peachtree representative that they've received a bid from

22  JG Wentworth (or vice-versa), one brand can give way to the other – preserving

23  both profit for the common parent and the comforting illusion of vigorous

24  competition.  There is, therefore, true bid rigging involved, and the public,

25  competition, and competitors have been adversely affected.

26       29.    By knowingly allowing JG Wentworth and Peachtree to simultaneously

27  bid on the same search terms, Google is deliberately allowing consumers to be

28  deceived into thinking they are exploring genuine competing alternatives when, in

Blecher Collins
Pepperman & Joye

1  fact, they are getting bids from two parts of the same integrated, commonly-

2  managed entity.  And Google is sharing in the profit generated by this scheme by

3  accepting millions of dollars in "pay-per-click" payments from JG Wentworth every

4  year.  Google is facilitating this deception in violation of its own policies and

5  applicable state and federal law.  The end result is that a consumer who uses Google

6  to find JG Wentworth and Peachtree thinks she has shopped around and received

7  competitive bids but has not.  She has been "tricked."  And actual competitors, such

8  as Novation, are frozen out of the opportunity to offer a better price and to win a

9  share of the market, which JG Wentworth and Peachtree continue to dominate.  The

10 present system serves to relieve JG Wentworth and Peachtree of the pressure

11 normally created by competitive pricing and has permitted an artificially enhanced

12 pricing structure that causes consumers to pay higher prices.  This trend and adverse

13 effects have been exacerbated and magnified because so many consumers now rely

14 on small handheld mobile phones for internet access, and this auctioning of space

15 typically limits the willingness and ability of consumers to search beyond the top

16 one or two of the displayed entities.  Accordingly, the present system has ensured

17 that even price-sensitive consumers who do try to shop will often only find JG

18 Wentworth and its sister brand Peachtree displayed.

19        30.    Google, as a conscious and willing participant with JG Wentworth and

20 Peachtree, has played and continues to play a crucial and necessary role in enabling

21 this "scam" on the public, competition, and competitors and by causing

22 overpayment of huge sums by consumers while profiting handsomely from the

23 above-described deception it perpetuates.

24        31.    Since the August 2011 JG Wentworth/Peachtree merger, Google has

25 accepted between $10 and $20 million in pay-per-click fees from JG Wentworth or

26 its subsidiaries in consideration for directing internet users to websites and/or phone

27 numbers managed and controlled by JG Wentworth brands (including both "JG

28 Wentworth" and "Peachtree"), all while turning a blind eye to the deception it

1  promotes and perpetuates.

2  **IV.**

3  **CLAIMS FOR RELIEF UNDER THE ANTITRUST LAWS**

4  **Section 7 of the Clayton Act and Section 2 of the Sherman Act**

5  32.   The actual and likely continued effect of JG Wentworth's acquisition of

6  Peachtree, has substantially lessened and will continue to substantially lessen

7  competition and to create a monopoly in interstate trade and commerce in the United

8  States factoring of structured settlements in violation of Section 7 of the Clayton

9  Act, 15 U.S.C. § 18.

10  33.   The aforesaid acquisition, taken together with the acts described in

11  paragraphs 1 through 31, inclusive, constitute a violation of Section 2 of the

12  Sherman Act, 15 U.S.C. § 2, in that those acts constitute and evidence an attempt to

13  monopolize, a conspiracy to monopolize, and actual monopolization of the

14  structured settlement relevant market in the United States.

15  34.   As a result of the foregoing merger and additional conduct, the

16  following effects will continue to exist and/or are likely to occur:

17  (a)   Actual and potential competition between JG Wentworth and

18  Peachtree has been eliminated in the United States, and JGWPT will emerge with

19  monopoly power;

20  (b)   In the long term, prices paid for structured settlement factoring

21  will diminish, to the injury of consumers;

22  (c)   The incentive to innovate and improve products will be reduced;

23  and

24  (d)   Consumers utilizing structured settlement factoring will be

25  deprived of a choice of vendors and will be forced to deal with a JGWPT entity.

26  **A.   Injury to Novation**

27  35.   By reason of the foregoing, Novation has suffered antitrust injury, *i.e.*,

28  injury resulting directly from a reduction in the vigor of the competitive process in

Blecher Collins
Pepperman & Joye

the factoring of structured settlements.  Consumers have been deprived of the benefit of competition in that industry and have been effectively deprived of true choice.  This injury consists of Novation being foreclosed from the opportunity of competing in the aforesaid relevant product market and continuing to operate as a competitive force in that market.  As a result, Novation has been, and will continue to be, deprived of the revenues and profits that it would otherwise have earned in the competitive process.  In addition, but for the illegal merger and the subsequent monopolizing conduct, the value of Novation as an ongoing concern would have continued to increase, whereas now its business has a vastly reduced value because it has been substantially neutralized as a competitor as a result of the integration of JG Wentworth and Peachtree and the follow-on anticompetitive conduct.  Novation does not now know the exact amount of the damages caused by the conduct described in this claim for relief, but believes such damages to exceed $15,000,000.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff Novation requests entry of judgment against Defendants as follows:

1.     That the acquisition by Defendant JG Wentworth of Defendant Peachtree be adjudged and decreed to violate Section 7 of the Clayton Act, and that Defendant JG Wentworth be required to divest itself of the assets acquired from Defendant Peachtree and to reconstitute a new and effective competitor;

2.     That Plaintiff Novation recover treble damages, costs, and reasonable attorneys' fees for the alleged violations of Section 7 of the Clayton Act and Section 2 of the Sherman Act as alleged herein; and

3.     That an injunction be issued preventing future violations; and

4.     Such other and further relief as may be just and proper.

Blecher Collins
Pepperman & Joye

-11-

1    Dated: February 10, 2015       BLECHER COLLINS

2                                  PEPPERMAN & JOYE, P.C.
                                 MAXWELL M. BLECHER

3                                  COURTNEY A. PALKO

4

5

6                        By:       */s/ Maxwell M. Blecher*

7                                  Maxwell M. Blecher
                                 Attorneys for Plaintiff

8   68825.7                            Novation Ventures, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury pursuant to the Federal Rules of Civil

Procedure, Rule 38(b) and Local Rule 38-1.

Dated:  February 10, 2015            BLECHER COLLINS
PEPPERMAN & JOYE, P.C.
MAXWELL M. BLECHER
COURTNEY  A. PALKO


By:      */s/ Maxwell M. Blecher*
         Maxwell M. Blecher
        Attorneys for Plaintiff
        Novation Ventures, LLC

Blecher Collins
Pepperman & Joye

BC
PJ