1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Harold A. Barza (Bar No. 80888)
2    halbarza@quinnemanuel.com
   Michael E. Williams (Bar No. 181299)
3    michaelwilliams@quinnemanuel.com
   Kristen Bird (Bar No. 192863)
4    kristenbird@quinnemanuel.com
   Shahin Rezvani (Bar No. 199614)
5    shahinrezvani@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone: (213) 443-3000
7  Fax: (213) 443-3100

8  Counsel for Defendants The J.G. Wentworth
   Company, LLC, The J.G. Wentworth Company,
9  J.G. Wentworth S.S.C. Limited Partnership, and
   PeachHoldings, LLC

10                  UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12  NOVATION VENTURES, LLC,              CASE NO. 2:15-cv-00954

13                                       **DEFENDANTS' NOTICE OF**
14  Plaintiff,                           **MOTION AND MOTION TO**
                                         **DISMISS COMPLAINT FOR**
15                                       **FAILURE TO STATE A CLAIM**
    vs.                                  **PURSUANT TO FED.R.CIV.P.**
16                                       **12(B)(6); MEMORANDUM OF**
    THE J.G. WENTWORTH COMPANY,          **POINTS AND AUTHORITIES**
17  LLC, a Delaware limited liability    **IN SUPPORT THEREOF**

18  company, formerly known as J.G.WPT

19  HOLDINGS, LLC; THE J.G.              Hearing Date: May 18, 2015
                                         Time:          1:30 p.m.
20  WENTWORTH COMPANY, a                 Location:      Courtroom No. 14
                                         Judge:Hon. Beverly Reid O'Connell
21  Delaware corporation, formerly known

22  as J.G.WPT, INC.; J.G. WENTWORTH

23  S.S.C. Limited Partnership, a Nevada

24  limited partnership; and PEACH

25  HOLDINGS, LLC, a Delaware limited

26  liability company dba PEACHTREE

27  FINANCIAL SOLUTIONS,

28          Defendants

1

## NOTICE OF MOTION AND MOTION

2        TO PLAINTIFF NOVATION VENTURES, LLC, AND ITS ATTORNEYS

3  OF RECORD:

4        PLEASE TAKE NOTICE that on May 18, 2015, in Courtroom 14 of the

5  above-entitled court, located at 312 North Spring Street, Los Angeles, CA 90012-

6  4701, before the Honorable Beverly Reid O'Connell, United States District Judge,

7  Defendants The J.G. Wentworth Company, LLC, The J.G. Wentworth Company,

8  J.G. Wentworth S.S.C. Limited Partnership, and Peach Holdings, LLC (collectively,

9  "Defendants"), will, and hereby do, move the Court for an order dismissing the

10 Complaint for failure to state a claim.

11       Defendants make the Motion pursuant to *Fed. R. Civ. P.* 12(b)(6) on the

12 ground that, for the reasons set forth in the attached Memorandum of Points and

13 Authorities, the Complaint fails to sufficiently plead any claim for relief.

14       Defendants base the Motion on this Notice; the attached Memorandum of

15 Points and Authorities; the Complaint and all the pleadings and records on file

16 herein; such matters of which the Court may properly take judicial notice; and upon

17 such other evidence or argument as may be presented at or before the hearing on the

18 Motion.

19       This motion is made following the conference of counsel pursuant to L.R. 7-3

20 which took place on March 25, 2015.

21 DATED: April 6, 2015               QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
22

23

24               By  */s/ Michael Williams*
                    Harold A. Barza (Bar No. 80888)
25                  Michael E. Williams (Bar No. 181299)
                    Counsel for Defendants The J.G.
26                  Wentworth Company, LLC, The J.G.
                    Wentworth Company, J.G. Wentworth
27                  S.S.C. Limited Partnership, and
                    PeachHoldings. LLC
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

Preliminary Statement .................................................................................................1

Statement of Relevant Facts ......................................................................................2

Argument ..........................................................................................................................5

I.    NOVATION MUST PLEAD FACTS GIVING RISE TO FACIALLY PLAUSIBLE CLAIMS TO SURVIVE A MOTION TO DISMISS. ...............5

II.   NOVATION FAILS TO ALLEGE ANTITRUST INJURY TO SUPPORT A CLAIM FOR VIOLATION OF SECTION 7 OF THE CLAYTON ACT. ...................................................................................................6

    A.    A Plaintiff Asserting a Violation of Section 7 of the Clayton Act Must Show Antitrust Injury to Bring Suit. ................................6

    B.    Novation Fails to Adequately Allege Antitrust Injury as a Result of the Merger.......................................................................................7

        1.    Novation cannot establish antitrust injury as a result of the merger alone. ....................................................................8

        2.    As a competitor, Novation cannot show antitrust injury as a result of a reduction in competition or consumer harm.............9

    C.    Novation's Alleged Injury Does Not Flow from Any Anti-Competitive Effect of the Merger. ........................................................11

        1.    Novation's alleged loss of profits results from lawful competition in the bidding on Google AdWords. ......................13

        2.    Novation fails to plead plausible facts suggesting that the merger caused it any harm at all................................................14

III.   NOVATION FAILS TO ALLEGE PLAUSIBLE CLAIMS UNDER SECTION 2 OF THE SHERMAN ACT..........................................................17

    A.    Novation's Monopolization Claim Fails for the Additional Reason That It Does Not Allege the Willful Acquisition or Maintenance of Monopoly Power...........................................................17

        1.    There is nothing anticompetitive about Defendants' bidding on Google AdWords.......................................................18

-i-

CASE NO. 2:15-cv-00954

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

2.  Defendants' maintenance of separate brands is not anticompetitive. .......................................................... 20

B.  Novation Fails to Allege Anticompetitive Conduct or Specific Intent to Support Its Attempted Monopolization Claim. ..................... 21

IV.  NOVATION FAILS TO PLEAD A VIABLE CLAIM FOR BID RIGGING. ...................................................................... 22

V.  NOVATION FAILS TO ALLEGE A PROPER RELEVANT MARKET. .......................................................................... 24

Conclusion ............................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*321 Henderson Receivables Origination, LLC v. Red Tomahawk,*
  172 Cal. App. 4th 290 (2009)..................................................................2

*Alberta Gas Chemicals Ltd. v. E.I. Du Pont De Nemours and Co.,*
  826 F.2d 1235 (3d Cir. 1987) ...............................................................8, 9

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP,*
  592 F.3d 991 (9th Cir. 2010) .................................................................17

*AlliedSignal, Inc. v. B.F. Goodrich Co.,*
  183 F.3d 568 (7th Cir. 1999) .................................................................11

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California,*
  190 F.3d 1051 (9th Cir. 1999) ................................................................7

*American Professional Testing Service, Inc. v. Harcourt*
  *Brace Jovanovich Legal and Professional Publications, Inc.,*
  108 F.3d 1147 (9th Cir. 1997) ...............................................................21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...............................................................................6

*Associated Gen. Contractors of Cal., Inc. v. Carpenters,*
  459 U.S. 519 (1983) ............................................................................6, 8

*Balistreri v. Pacifica Police Dept.,*
  901 F.2d 696 (9th Cir. 1988) ...................................................................5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................6

*Big Bear Lodging Ass'n v. Snow Summit, Inc.,*
  182 F.3d 1096 (9th Cir. 1999) ...............................................................11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
  429 U.S. 477 (1977) ........................................7, 8, 11, 12, 14, 15, 16

*Cal. Computer Prods., Inc. v. Int'l Bus. Mach. Corp.,*
  613 F.2d 727 (9th Cir. 1979) .................................................................17

*Cargill v. Monfort of Colorado,*
  479 U.S. 104 (1986) ...........................................7, 11, 12, 13, 14

*Cascade Health Solutions v. PeaceHealth,*
  515 F.3d 883 (9th Cir. 2008) .................................................................18

*Copperweld Corp. v. Independence Tube Corp.,*
  467 U.S. 752 (1984) .........................................................................22, 23

-iii-

CASE NO. 2:15-cv-00954

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1    *Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co.*,
        99 F.3d 937 (9th Cir. 1996) ....................................................................... 17, 22
2
3    *Drop Dead Co. v. S. C. Johnson & Son, Inc.*,
        326 F.2d 87 (9th Cir. 1963) .............................................................................. 20
4    *Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.*,
        433 Fed. App'x 598 (9th Cir. 2011) ................................................................. 24
5
6    *In re Gilead Scis. Sec. Litig.*,
        536 F.3d 1049 (9th Cir. 2008) ............................................................................ 6
7    *Ileto v. Glock Inc.*,
        349 F.3d 1191 (9th Cir. 2003) ............................................................................ 5
8
9    *Jetaway Aviation LLC v. County of Montrose*,
        2012 WL 1044304 (D. Colo. March 28, 2012) ................................................ 24
10   *John Lenore & Co. v. Olympic Brewing Co.*,
        550 F.2d 495 (9th Cir. 1977) ............................................................................ 16
11
12   *L-3 Communications v. Jaxon Engineering & Maintenance, Inc.*,
        863 F. Supp. 2d 1066 (D. Colo. 2012) ............................................................. 24
13   *Love v. Basque Cartel*,
        873 F. Supp. 563 (D. Wyo. 1995) ................................................................ 22, 23
14
15   *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*,
        140 F.3d 1228 (9th Cir. 2001) .......................................................................... 15
16   *Manzarek v. St. Paul Fire & Marine Ins. Co.*,
        519 F.3d 1025 (9th Cir. 2008) ............................................................................ 5
17
18   *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*,
        475 U.S. 574 (1986) .......................................................................................... 10
19   *Newcal Indus. v. Ikon Office Solutions*,
        513 F.3d 1038 (9th Cir. 2008) .......................................................................... 25
20
21   *Paladin Assocs. v. Montana Power, Co.*,
        328 F.3d 1145 (9th Cir. 2003) ............................................................................ 7
22   *Pool Water Products v. Olin Corp.*,
        258 F.3d 1024 (9th Cir. 2001) .................................................................. 8, 11, 14
23
24   *Purex Corp. v. The Proctor & Gamble Co.*,
        596 F.2d 881 (9th Cir. 1979) .............................................................................. 7
25   *Rebel Oil Co. v. Atlantic Richfield Co.*,
        51 F.3d 1421 (9th Cir. 1995) ............................................................................ 11
26
27   *Ruotolo v. Fannie Mae*,
        933 F. Supp. 2d 512 (S.D.N.Y. 2013) .............................................................. 24
28

*Spectrum Sports, Inc. v. McQuillan,*
   506 U.S. 447 (1993) ......................................................................... 20

*Sprint Nextel Corp. v. AT&T Inc.,*
   821 F. Supp. 2d 308 (D.D.C. 2011) .......................................... 8, 10, 11

*Sunbelt Television, Inc. v. Jones Intercable, Inc.,*
   795 F. Supp. 333 (C.D. Cal. 1992) ................................................. 18

*Tanaka v. Univ. of Southern California,*
   252 F.3d 1059 (9th Cir. 2001) (granting 12(b)(6) .......................... 24, 25

*Thurman Indus., Inc. v. Pay N Pak Stores, Inc.,*
   875 F.2d 1369 (9th Cir. 1989) ........................................................ 24

*U.S. v. Reicher,*
   983 F.2d 168 (10th Cir.1992) .......................................................... 22

*United States v. Heffernan,*
   43 F.3d 1144 (7th Cir. 1994) ......................................................... 22

*United States v. Syufy Enterprises,*
   903 F.2d 659 (9th Cir. 1990) ......................................................... 18

*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko,*
   540 U.S. 398 (2004) .................................................................. 10, 18

*Weyerhaeuser v. Ross-Simmons Hardwood Lumber,*
   549 U.S. 312 (2007) .......................................................... 19, 20, 23

*Zenith Radio Corp. v. Hazeltine Research,*
   395 U.S. 100 (1969) ....................................................................... 7

### Statutes

15 U.S.C. § 1 ..................................................................................... 5

15 U.S.C. § 18 ................................................................................... 6

15 U.S.C. § 18a(d) ............................................................................ 3

15 U.S.C. § 18a .................................................................................. 3

15 U.S.C. § 2 ................................................................................... 17

*Cal. Ins. Code,* §§ 10134 - 10139.5 ..................................................... 2

*Cal. Ins. Code,* § 10136(a) ................................................................. 2

*Cal. Ins. Code,* § 10137 ................................................................... 10

## **Miscellaneous**

Irving Scher, *Antitrust Adviser*, § 3:66 at 3-309-3-310 (4th ed. 2014) ......................8

Phillip E. Areeda et al., *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 335f, at 73 (3d ed. 2007)................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

By this lawsuit, Plaintiff Novation Ventures, LLC ("Novation") is attempting to use the antitrust laws to thwart competition, rather than protect it. Four years after Defendants J.G. Wentworth and Peachtree merged, Novation, a competitor, is now claiming that merger was illegal, that this Court should unwind that transaction, and Novation should be entitled to treble damages for alleged injuries it has suffered as a result of this merger. Novation also alleges that Defendants have monopolized or attempted to monopolize the market for the purchase of structured settlement payment rights (sometimes referred to as "factoring") in which Novation and Defendants compete. A review of the allegations in the Complaint, however, makes clear that Novation does not state (and likely cannot state) sufficient facts giving rise to plausible claims under the antitrust laws. As such, it must be dismissed.

Novation claims the merger between Defendants, standing alone, violates Section 7 of the Clayton Act. Not so. To the contrary, the Supreme Court has made clear that a merger only violates Section 7 when it results in anticompetitive effects as a result of conduct made unlawful by the antitrust laws. Additionally, the plaintiff must establish antitrust injury to bring suit. Novation's Complaint fails to establish either. Novation fails to plead facts identifying any anticompetitive conduct by Defendants. Novation contends that Defendants' post-merger bidding on Google AdWords results in Defendants obtaining two of the top three or four internet search positions, increasing Novation's cost to appear in the top search results. However, such conduct is the very essence of competition and cannot support a claim of antitrust injury. Novation's allegations that the merger reduced competition or may result in consumer harm are also insufficient to establish antitrust injury. The law (and common sense) dictates that as a competitor, Novation would actually benefit, rather than being harmed, when a merger reduces the number of competitors in the market or results in higher prices to consumers. As

1    such, these allegations cannot establish antitrust injury to Novation.

2        Novation's lack of antitrust injury is also fatal to its Section 2 claims for
3    monopolization and attempted monopolization.  In addition, Novation fails to plead
4    facts establishing predatory or anticompetitive conduct to support either claim and
5    has failed to allege specific intent to control prices or destroy competition to support
6    its attempted monopolization claim.  Finally, Novation fails to adequately plead a
7    relevant product market, which requires allegations of cross-elasticity of demand
8    and reasonable interchangeability of use.

9        For all the reasons explained herein, Defendants' Motion should be granted.

10                    **Statement of Relevant Facts**[1]

11        Plaintiff Novation and Defendants J.G. Wentworth and Peachtree[2] are
12    factoring companies engaged in the business of buying structured settlement
13    payment rights from settlement recipients who do not wish to or cannot wait years
14    for their annuitized payments.  Complaint ¶¶ 3,4.  In other words, if an individual
15    has a structured settlement whereby he/she is receiving a stream of future payments
16    and they need access to cash, "[t]he factoring company pays the consumer cash up-
17    front and, in exchange, receives the consumer's right to receive some or all of their
18    future settlement payments." Complaint ¶ 18.  "Typically, a consumer will sell only
19    a part of their future payments to raise cash for a specified need." *Id.*

20        California, like most states, has adopted legislation to regulate, monitor and
21    approve the sale or factoring of any structured settlement. *Cal. Ins. Code*, §§ 10134
22    – 10139.5.  In California, "[n]o direct or indirect transfer of structured settlement
23    payment rights [...] shall be effective [...] unless all of the provisions of [*Cal. Ins.
24    Code*, §§ 10134 – 10139.5] are satisfied." *Cal. Ins. Code,* § 10136(a); *321*

---

25    [1]   For purposes of this motion *only*, Defendants accept as true the non-conclusory,
26    factual allegations of the Complaint except as noted otherwise herein.

27    [2]   Although Novation has named a number of related entities as defendants, for
      purposes of this Motion they will be referred to as J.G. Wentworth and Peachtree or
28    collectively as Defendants.

*Henderson Receivables Origination, LLC v. Red Tomahawk*, 172 Cal. App. 4th 290, 294 (2009). Such transactions involving California residents must be submitted "to superior courts of the State of California for review and approval" and "[i]n each petition to approve a proposed transaction, a superior court judge is asked to find that the transaction is 'fair' and in the selling consumer's 'best interests.'" Complaint ¶¶ 20, 21.

Prior to August 2011, J.G. Wentworth funded approximately 40-45% of the structured settlement factoring transactions completed in the United States annually. Complaint ¶ 7. Peachtree funded approximately 25-30% of the structured settlement factoring transactions completed in the United States annually. Complaint ¶ 8. Both companies would compete against each other and other competitors for the factoring of structured settlements by broadcasting television ads and through pay-per-click Internet advertising. Complaint ¶¶ 7, 8. In August 2011, J.G. Wentworth acquired Peachtree. Complaint ¶ 9. Due to the size of the acquisition, the transaction required pre-merger notification to the Federal Trade Commission and Department of Justice and expiration of the waiting period pursuant to the Hart Scott Rodino Act before it could be consummated. 15 U.S.C. § 18a (describing premerger notification and waiting period).[3] Novation alleges that post-merger, "a common ownership and management entity, maintains and promotes both brands, running ads for both J.G. Wentworth and Peachtree as though they continue to be separate, competitive entities when in fact they are commonly owned and managed." Complaint ¶ 27.

According to Novation, "[t]ypically, individuals (or their advisors) seeking to find a buyer for structured settlement payment rights will search the Internet using

---

[3] The notification must "contain such documentary material and information relevant to a proposed acquisition as is necessary and appropriate to enable the Federal Trade Commission and the Assistant Attorney General to determine whether such acquisition may, if consummated, violate the antitrust laws." 15 U.S.C. § 18a(d).

1  Google."  Complaint ¶ 22.  Google operates its AdWords advertising business as a
2  dynamic online auction in which competing businesses bid against one another to
3  pay Google a "per click" fee whenever (a) a Google user seeks information about a
4  designated search term, (b) the advertiser's listing is displayed, and (c) the user
5  "clicks" on the displayed listing, thereby taking the user to the advertiser's website
6  or phone number.  *Id*. ¶ 13.  All other things being equal, the higher the ranking of a
7  search result on a user's desktop computer or mobile phone screen, the more likely
8  it is that the user will consider and "click on" that listing.  *Id*.  Thus, advertisers
9  using the AdWords system compete with one another to achieve a relatively higher
10 position in Google's "paid search" rankings, bidding more to achieve a higher
11 ranking.  *Id*.  Depending on the category of good or service advertised, geographic
12 region, time of day, and other factors, a single "click" on AdWords may cost as little
13 as a few pennies or as much as five hundred dollars.  *Id*.

14      Novation contends that, post-merger, Defendants J.G. Wentworth and
15 Peachtree are able to consistently grab two of the top three or four search listing
16 results for consumers searching for structured settlement buyers by "coordinating"
17 their Google AdWords "pay-per-click" bidding and budgets.  Complaint ¶ 23.  This
18 behavior, according to Novation, crowds out competitors and/or drives up the cost
19 of being in second or third position in any given search ranking, making it more
20 difficult and expensive for Novation to be found by potential customers looking for
21 genuinely competing offers.  *Id*.  Novation does not allege that it or any other
22 competitor is foreclosed from appearing in the top search positions or that
23 Defendants always obtain the first and second positions for any search terms.

24      Novation alleges that "[t]he relevant product market [...] is the factoring of
25 structured settlement payment rights [...] in the United States."  Complaint ¶ 16.
26 Novation further alleges "there are only a handful of companies competing for the
27 factoring of structured settlement payment rights in the United States.  Post-merger,
28 J.G. Wentworth is by far the largest, with a market share of about 75%.  Novation

has a market share believed to be no more than 7%." Complaint ¶ 17. Novation contends that "[t]he merger, combining the two largest competitors and affording the surviving entity or entities a monopoly market share, *standing alone*, violates section 7 of the Clayton Act (15 U.S.C. § 18)." Complaint ¶ 15 (emphasis added). According to Novation, "[t]he actual and likely continued effect of J.G. Wentworth's acquisition of Peachtree, has substantially lessened and will continue to substantially lessen competition and to create a monopoly in interstate trade and commerce in the United States factoring of structured settlements [...]." *Id*. ¶ 32. Novation further contends that, "[c]oupled with their subsequent conduct, J.G. Wentworth and Peachtree also violate the attempt to monopolize, conspiracy to monopolize, and monopolization clauses of Section 2 of the Sherman Act (15 U.S.C. § 2)." *Id.* ¶ 15.[4]

### **Argument**

### I.   **NOVATION MUST PLEAD FACTS GIVING RISE TO FACIALLY PLAUSIBLE CLAIMS TO SURVIVE A MOTION TO DISMISS.**

A motion to dismiss under *Federal Rule of Civil Procedure* 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). Dismissal under Rule 12(b)(6) may be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). In assessing the sufficiency of the pleadings, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not and does not accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable

---

[4]   Novation has not named Google as a defendant (Complaint ¶ 10) and does not allege a violation of Section 1 of the Sherman Act, which prohibits a combination or conspiracy in restraint of trade. 15 U.S.C. § 1.  Complaint ¶¶ 1, 15.

1    inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

2        To survive dismissal, a complaint must plead a plausible set of facts: "A

3    claim has facial plausibility when the pleaded factual content allows the court to

4    draw the reasonable inference that the defendant is liable for the misconduct

5    alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard

6    "asks for more than a sheer possibility that a defendant has acted unlawfully," and a

7    complaint that pleads facts that are "merely consistent with" a defendant's liability

8    "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678.

9        When assessing antitrust claims, "a formulaic recitation of the elements of a

10    cause of action" will not shield a complaint from dismissal.  *Bell Atl. Corp. v.*

11    *Twombly*, 550 U.S. 544, 555 (2007).  As the Supreme Court has noted precisely in

12    the context of private antitrust litigation, "it is one thing to be cautious before

13    dismissing an antitrust complaint in advance of discovery, but quite another to

14    forget that proceeding to antitrust discovery can be expensive."  *Id.* at 558-59

15    (internal citations omitted).  As such, "a district court must retain the power to insist

16    upon some specificity in pleading before allowing a potentially massive factual

17    controversy to proceed." *Associated Gen. Contractors of Cal., Inc. v. Carpenters*,

18    459 U.S. 519, 528, n.17 (1983) ("*AGC*"), *quoted with approval in Twombly*, 550

19    U.S. at 559.   As explained further below, Novation fails to meet the requisite

20    pleading standard for its antitrust claims, and dismissal is warranted.

21    **II.**   **NOVATION FAILS TO ALLEGE ANTITRUST INJURY TO**

22         **SUPPORT A CLAIM FOR VIOLATION OF SECTION 7 OF THE**

23         **CLAYTON ACT.**

24         **A.**   **A Plaintiff Asserting a Violation of Section 7 of the Clayton Act**

25              **Must Show Antitrust Injury to Bring Suit.**

26        Section 7 of the Clayton Act prohibits a corporation from acquiring the stock

27    or assets of another corporation in which the effect "may be substantially to lessen

28    competition, or to tend to create a monopoly."  15 U.S.C. § 18.  Although Section 4

of the Clayton Act provides a right of private enforcement, a plaintiff must allege antitrust injury in order to assert such a claim. *Cargill v. Monfort of Colorado*, 479 U.S. 104, 110, fn. 5 (1986) ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing under § 4 [...]."). In order to establish antitrust injury, a plaintiff must prove "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1055 (9th Cir. 1999); *Paladin Assocs. v. Montana Power, Co.,* 328 F.3d 1145, 1158 (9th Cir. 2003) ("Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury.").

In the context of claims under Section 7 of the Clayton Act, the Supreme Court has held that plaintiffs:

> must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be "the type of loss that the claimed violations . . . would be likely to cause."

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977), *quoting Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 125 (1969). Thus, Novation must allege facts to "establish (1) that the acquisition had anti-competitive effects, or that anti-competitive acts made possible by the acquisition occurred, and (2) that [plaintiff] was injured as a result of those anti-competitive acts or effects." *Purex Corp. v. The Proctor & Gamble Co.*, 596 F.2d 881, 887 (9th Cir. 1979), *citing Brunswick*, 429 U.S. at 489.

**B.**   **<u>Novation Fails to Adequately Allege Antitrust Injury as a Result of the Merger.</u>**

1    **1.**  **Novation cannot establish antitrust injury as a result of the**

2       **merger alone.**

3    Novation alleges that "[t]he merger, combining the two largest competitors

4 and affording the surviving entity or entities a monopoly market share, standing

5 alone, violates section 7 of the Clayton Act (15 U.S.C. § 18)." Complaint ¶ 15. The

6 Supreme Court has made clear, however, that a merger, standing alone, is not

7 actionable under Section 7. "Every merger of two existing entities into one, whether

8 lawful or unlawful, has the potential for producing economic readjustments that

9 adversely affect some persons. But Congress has not condemned mergers on that

10 account; it has condemned them only when they may produce anticompetitive

11 effects." *Brunswick*, 429 U.S. at 487. Indeed, mergers are often procompetitive and

12 benefit consumers. Therefore, "[c]ourts have carefully scrutinized enforcement

13 efforts by competitors because their interests are not necessarily congruent with the

14 consumer's stake in competition. Mergers that promote efficiency and lower prices

15 in the marketplace, for example, may cause economic loss to competitors." *Alberta*

16 *Gas Chemicals Ltd. v. E.I. Du Pont De Nemours and Co.*, 826 F.2d 1235, 1239 (3d

17 Cir. 1987). As one antitrust commentator has observed, "[h]orizontal transactions

18 [between competitors] are much more likely to disadvantage rivals by being

19 procompetitive than by being anticompetitive." Irving Scher, *Antitrust Adviser*, §

20 3:66 at 3-309-3-310 (4th ed. 2014).

21    Consequently, to establish antitrust injury for a Section 7 claim, private

22 "plaintiffs [...] must show they were *actually* injured by a lessening of competition."

23 *Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1032 (9th Cir. 2001), *citing,*

24 *AGC,* 459 U.S. at 535. Moreover, "'injury-in-fact [...] is absent when a plaintiff

25 complains [only] that its competitors' merger [would be] illegal because it [would]

26 increase[ ] market concentration unduly.'" *Sprint Nextel Corp. v. AT&T Inc.*, 821 F.

27 Supp. 2d 308, 319 (D.D.C. 2011) (citing Phillip E. Areeda et al., *Antitrust Law: An*

28 *Analysis of Antitrust Principles and Their Application* ¶ 335f, at 73 (3d ed. 2007)).

1   Therefore, Novation cannot establish antitrust injury simply by virtue of

2   Defendants' alleged post-merger combined 75% market share.  Complaint ¶ 17.

3              **2.**     **As a competitor, Novation cannot show antitrust injury as a**

4                        **result of a reduction in competition or consumer harm.**

5          Novation's conclusory allegations of anti-competitive effects resulting from

6   the merger in Paragraph 34 of the Complaint are also factually and legally

7   inadequate to establish antitrust injury.  Novation alleges that as a result of the

8   merger:  (a) actual and potential competition between J.G. Wentworth and Peachtree

9   has been eliminated in the United States, and Defendants will emerge with

10  monopoly power; (b) in the long term, prices paid for structured settlement factoring

11  will diminish, to the injury of consumers; (c) the incentive to innovate and improve

12  products will be reduced; and (d) consumers utilizing structured settlement factoring

13  will be deprived of a choice of vendors and will be forced to deal with Defendants.

14  Complaint ¶ 34.  Not only are these alleged anticompetitive effects conclusory and

15  factually unsupported, they do not establish antitrust injury suffered by Novation.

16         Novation's claim that the merger eliminated competition between J.G.

17  Wentworth and Peachtree is insufficient to establish injury to Novation; as a

18  competitor, Novation would actually benefit from a reduction in the number of

19  competitors.  As the Third Circuit noted in rejecting a Section 7 claim brought by

20  one competitor against another:

21         It is curious that Alberta would assert a loss by conduct of Du Pont
           which, if Alberta is to be credited, *reduced the number of suppliers in*
22         *the marketplace*.  If that action helps Du Pont as a producer, *it*
           *inevitably aids Alberta as well as every other producer*.
23
     *Alberta*, 826 F.2d at 1243 (emphasis added).
24
           Similarly, Novation cannot establish injury based on its allegations that
25
     consumers would be harmed by the merger through diminished prices paid for
26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

structured settlements or limitation of consumer choice.[5]   As the Supreme Court explained in *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*:

> Nor can [plaintiffs] recover damages for any conspiracy by [defendants] to charge higher than competitive prices in the American market. Such conduct would indeed violate the [antitrust laws], but it could not injure [plaintiffs]: as [defendants'] competitors, [plaintiffs] stand to gain from any conspiracy to raise the market price in [televisions].

475 U.S. 574, 583 (1986).

Relying on *Matsushita*, and the fundamental principle that a competitor is not hurt by a reduction in competition, a district court in the District of Columbia rejected Sprint's claim of antitrust injury arising from a merger of its competitors AT&T and T-Mobile. *Sprint*, 821 F. Supp. 2d at 319. Sprint alleged that "AT&T's acquisition of T-Mobile would affect an illegal concentration of market power and lead to higher retail wireless rates" and therefore, harm to consumers. *Id.* The court rejected this argument, explaining "[w]hen allegedly anticompetitive behavior '[has] the effect of either raising market price or limiting output' and is therefore 'harmful to competition,' it 'actually *benefit[s]* competitors by making supracompetitive pricing more attractive.'" *Id.*, *quoting Matsushita*, 475 U.S. at 582-3 (emphasis in original). Although "harm to *consumers* by way of increased prices is the type of injury the antitrust laws were designed to prevent, [...] it is not an injury-in-fact that *competitors* suffer." *Id.* (emphasis in original). Thus, "[w]hether the result of an increase in market concentration by itself, or the oligopolistic price coordination that

---

[5]   Novation's allegations of purported consumer harm are also not facially plausible.  The acquisition at issue occurred four years ago (Complaint ¶ 15), yet Novation fails to allege any specific facts to suggest that prices paid for structured settlement factoring have indeed diminished in that time.  Nor is that likely given that every potential sale of a structured settlement is heavily regulated by the State and can only be approved after a court reviews the terms and determines that the transaction is "fair" and in the seller's "best interest." Complaint ¶ 21; *see also, Cal. Ins. Code*, § 10137; *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 412 (2004) (where regulatory structure exists, "it will be less plausible that the antitrust laws contemplate such additional scrutiny.").

excessive concentration portends, an increase in market prices alone does not harm competitors.  To the contrary, 'You *want* your competitors to charge high prices.'" *Id.* at 320 (internal citations omitted); *see also*, *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1102 (9th Cir. 1999) (competitor lacks antitrust injury to complain of price-fixing conspiracy which would benefit competitor); *AlliedSignal, Inc. v. B.F. Goodrich Co.*, 183 F.3d 568, 576 (7th Cir. 1999) ("A competitor in the merging industry ordinarily lacks antitrust standing because that competitor would generally only stand to gain from the increase in prices.").

Novation's allegations that the merger unduly increased Defendants' market concentration, eliminated a competitor, or would result in consumer harm do not constitute antitrust injury suffered by Novation because as a competitor, Novation would actually benefit from this conduct.  Thus, Novation fails to allege plausible facts to establish it has suffered any antitrust injury as a result of the merger.

## C.   <u>Novation's Alleged Injury Does Not Flow from Any Anti-Competitive Effect of the Merger.</u>

Novation also fails to allege facts to establish that its alleged "loss flows from an *anticompetitive* aspect or effect of the defendant's behavior."  *Pool Water*, 258 F.3d at 1034 (emphasis in original).  As the Ninth Circuit explained, "[i]f the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se."  *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). Novation's alleged injuries consisting of "revenues and profits that it would otherwise have earned" (Complaint ¶ 35) do not flow from any anticompetitive effect of Defendants' conduct, and therefore do not constitute "antitrust injury."

The Supreme Court's decisions in *Brunswick* and *Cargill* aptly illustrate these principles and confirm Novation's lack of antitrust injury in this case.  In *Brunswick*, competing bowling centers brought a Section 7 claim against Brunswick for acquiring failing bowling alleys, contending that the acquisitions would

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1    substantially lessen competition or create a monopoly in violation of Section 7. The

2    plaintiffs argued that as a result of these acquisitions and Brunswick's resulting size,

3    it would have the ability to drive smaller competitors out of business, thus lessening

4    competition. Plaintiffs sought the loss of income they would have realized had the

5    failing bowling centers been allowed to go out of business. *Id.* at 480-81. The

6    Supreme Court rejected plaintiffs' claim due to a lack of antitrust injury because

7    plaintiffs' alleged loss of revenue was caused by an *increase* in competition:

8         [R]espondents complain that by acquiring the failing centers petitioner
          preserved competition, thereby depriving respondents of the benefits of
9         increased concentration. The damages respondents obtained are
          designed to provide them with the profits they would have realized had
10        competition been reduced. The antitrust laws, however, were enacted
          for "the protection of *competition,* not *competitors*."
11

12

13   *Brunswick*, 429 U.S. at 488 (emphasis in original, citation omitted).

14        Following the logic of *Brunswick*, the Supreme Court rejected another Section

15   7 claim based on the plaintiff's lack of antitrust injury in *Cargill*. There, the

16   plaintiff Monfort, a competitor in the beef packing industry, alleged a Section 7

17   violation based on a merger between the second and third largest beef packers.

18   According to Monfort, the merger would allow the defendant to increase its market

19   share at the expense of smaller competitors through a "price-cost squeeze," which

20   would require Monfort to lower its prices and lose profitability. *Cargill*, 479 U.S. at

21   114-115. The Supreme Court rejected this claim, concluding:

22        [t]he kind of competition that Monfort alleges here, competition for
          increased market share, is not activity forbidden by the antitrust laws. It
23        is simply [...] vigorous competition. To hold that the antitrust laws
          protect competitors from the loss of profits due to such price
24        competition would, in effect, render illegal any decision by a firm to
          cut prices in order to increase market share. The antitrust laws require
25        no such perverse result, for "[i]t is in the interest of competition to
          permit dominant firms to engage in vigorous competition, including
26        price competition."

27

28

1   *Id.* at 116 (citations omitted).  "The logic of *Brunswick* compels the conclusion that

2   the threat of loss of profits due to possible price competition following a merger

3   does not constitute a threat of antitrust injury." *Id.* at 116-7.

4            **1.    Novation's alleged loss of profits results from lawful**

5                    **competition in the bidding on Google AdWords.**

6            Here, Novation's alleged injury is simply the result of vigorous competition,

7   not any unlawful conduct by Defendants as a result of the merger.  At its core,

8   Novation complains that Defendants are competing for the placement of their

9   advertising on Google AdWords and as a result, Defendants "are able to consistently

10  grab two of the top three or four search listing results on many of the keyboards

11  used by consumers searching for structured settlement buyers."  Complaint ¶ 23.

12  According to Novation, this conduct has "driven up the cost of being in the 1st, 2nd,

13  or 3rd position so as to effectively preclude or minimize the competitive impact of

14  other entrants."  Complaint ¶ 28.

15          Even assuming for purposes of this Motion that Google AdWords plays a

16  significant role in a consumer's search for factoring companies, the allegation that

17  Defendants are driving up the cost of the top search positions is caused by increased

18  competition as opposed to anticompetitive conduct.  There is nothing unlawful about

19  Defendants' willingness to pay more to obtain higher advertising positions on

20  Google's AdWords, even if it results in Novation having to spend more to stay

21  competitive; indeed, that is the very essence of competition that the antitrust laws

22  are designed to protect.  That remains true even if Defendants were able to spend

23  more on AdWords as a result of the merger, a fact that Novation has not even

24  alleged.  Indeed, in *Cargill*, the Supreme Court rejected a Section 7 claim for lack of

25  antitrust injury despite plaintiff's claim that the merger would result in efficiencies

26  that would allow the Defendants to lower their costs to gain market share, forcing

27  plaintiff to lower its costs and lose profitability.  *Cargill*, 479 U.S. at 114-16.  The

28  Court explained, "the antitrust laws do not require the courts to protect small

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1  businesses from the loss of profits due to continued competition, but only against the

2  loss of profits from practices forbidden by the antitrust laws." *Cargill*, 479 U.S. at

3  116.  Novation's claim that it "has been deprived of the revenues and profits that it

4  would otherwise have earned in the competitive process" (Complaint ¶ 35) does not

5  constitute antitrust injury. *Brunswick*, 429 U.S. at 488 ("[I]t is far from clear that the

6  loss of windfall profits that would have accrued had the acquired centers failed even

7  constitutes 'injury' within the meaning of § 4."); *Pool Water*, 258 F.3d at 1036

8  ("reduced profits from lower prices and decreased market share is not the type of

9  harm Section 4 was meant to protect against.").

10      Moreover, other competitors, including Novation, are still able to obtain one

11  or two of the top three or four search listing results based on Novation's own

12  allegations.  Complaint ¶ 23.  There is nothing plausibly suggesting that Novation or

13  any other company could not bid more than Defendants are willing to bid if they so

14  chose, or that Google precludes Novation or others from participating in the

15  auctions.[6]  Essentially, Novation complains that it is harmed as a result of increased

16  competition to acquire the top search positions because Defendants are willing to

17  pay more for these positions.  This is simply vigorous competition, not antitrust

18  injury. *See Cargill*, 479 U.S. at 116.

19          **2.    Novation fails to plead plausible facts suggesting that the**

20               **merger caused it any harm at all.**

21      Finally, there are no plausible allegations to suggest that the merger between

22  J.G. Wentworth and Peachtree actually injured Novation at all with respect to pay-

___

[6]    Novation's conclusory assertion that it has been foreclosed from the opportunity
of competing in the relevant market and continuing to operate as a competitive force
in that market (Complaint ¶ 35) is factually unsupported and implausible.  There are
no allegations to suggest that Defendants' conduct has somehow prevented
Novation from continuing to compete as a factoring company or even appear in top
search positions on Google AdWords.  To the contrary, Novation alleges that it
maintains a market share of 7% and has not even alleged that its market share has
decreased post-merger.  Complaint ¶ 17.  Furthermore, Defendants are only able to
capture two of the top four search positions, leaving room for Novation and other
competitors to compete for the additional positions. Complaint ¶ 23.

per-click advertising.  Prior to the merger, J.G. Wentworth and Peachtree, the two largest competitors for factoring of structured settlements, both competed and advertised through Google AdWords for separate positions in search listings. Complaint ¶¶ 7, 8.  After the merger, both brands continue to do the same.  *Id*. ¶ 23. Plaintiff is still in the same position it was in before the acquisition – bidding against J.G. Wentworth and Peachtree for search positions – and would be in that same position if Peachtree had not been acquired by J.G. Wentworth (or if Peachtree had been acquired by some other company).  Thus, there is no antitrust injury for this reason as well.  *Brunswick*, 429 U.S. at 487 ("Respondents would have suffered the identical 'loss' but no compensable injury had the acquired centers instead obtained refinancing or been purchased by 'shallow pocket' parents."); *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc*., 140 F.3d 1228, 1232-1233 (9th Cir. 2001) (finding plaintiff lacked antitrust injury despite merger which resulted in 74% market share and foreclosed it from serving as a supplier of vintage tires because it "would have suffered the same injury had a small business acquired the exclusive right to manufacture and to distribute Firestone tires").  Indeed, just like the claim rejected in *Brunswick*, Novation's real complaint is that competition was *not* reduced after the merger because it still has to compete for search positions against both J.G. Wentworth and Peachtree in pay-per-click advertising. *Brunswick*, 429 U.S. at 488 (rejecting antitrust injury where plaintiffs damages consisted of "the profits they would have realized had competition been reduced").

Furthermore, to the extent Defendants are now coordinating their bidding and budgeting for Google AdWords (as Novation alleges), it would only plausibly be for the purpose of lowering Defendants' overall spend on Google AdWords by not engaging in a bidding war for the same search terms.  This result would actually benefit Novation by keeping the overall cost lower for certain search listings on

1  Google.  Novation fails to allege any plausible facts suggesting otherwise.[7]  In any

2  event, even if the merger made it *possible* for Defendants to coordinate their pay-

3  per-click advertising, this result was incidental to and not caused by anything that

4  would make the merger unlawful.  *John Lenore & Co. v. Olympic Brewing Co.*, 550

5  F.2d 495 (9th Cir. 1977) is instructive on this point.  In that case, the plaintiff -- a

6  beer distributor -- brought a Clayton Act Section 7 claim when the defendant

7  brewing company acquired another beer distributor and terminated its contract with

8  the plaintiff.  850 F.2d at 497.  Relying on *Brunswick*, the Ninth Circuit affirmed the

9  trial court's grant of summary judgment against the plaintiff:

> While we do concede that Lenore has suffered an injury to his property and business interests and that this injury did indeed occur within this area of the economy, we agree with the district court's findings that the terminations of the distributorships were not directly and proximately caused by the challenged acquisition.  Even though Lenore's injury may have ". . . occurred 'by reason of' the unlawful acquisitions, it did not occur 'by reason of' that which made the acquisitions unlawful." *Brunswick, supra*, 429 U.S. at 488, 97 S.Ct. at 697.  *The terminations were an incidental matter which the merger may have made possible, but certainly did not cause.*

*John Lenore & Co.*, 550 F.2d at 499-500 (emphasis added).

Novation fails to allege any plausible facts that it has been injured by the merger or "'by reason of that which made the acquisitions unlawful.'"  *Id.*; *Brunswick*, 479 U.S. at 488 ("it is quite clear that if respondents were injured, it was not 'by reason of anything forbidden in the antitrust laws': while respondents' loss occurred 'by reason of' the unlawful acquisitions, it did not occur 'by reason of' that which made the acquisitions unlawful.").

Because Novation fails to allege a plausible theory that it has suffered antitrust injury as a result of the merger, its Section 7 claim must be dismissed.

---

[7]  It would simply be irrational for Defendants to coordinate their bidding to pay more than they need to for these search terms, and as discussed further in Section III.A.1. below, Novation does not state a viable claim for predatory bidding.

III.    **NOVATION FAILS TO ALLEGE PLAUSIBLE CLAIMS UNDER SECTION 2 OF THE SHERMAN ACT.**

Section 2 of the Sherman Act prohibits monopolization and attempts to monopolize. 15 U.S.C. § 2.  In order to state a claim for monopolization under this provision, a plaintiff must allege: "(1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury." *Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996); *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010).  A claim for *attempted* monopolization, requires allegations of the defendant's (1) specific intent to control prices or destroy competition;  (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury. *Cost Mgmt. Servs.*, 99 F.3d at 950; *Cal. Computer Prods., Inc. v. Int'l Bus. Mach. Corp.*, 613 F.2d 727, 736 (9th Cir. 1979).

Novation's Complaint fails to allege sufficient facts to give rise to a plausible claim under either theory.  As an initial matter, dismissal of both Section 2 claims is warranted because, as explained above in Section II.B., Novation fails to establish antitrust injury, which is a necessary element of the Section 2 claims as well.  *See Allied Orthopedic*, 592 F.3d at 998; *Cost Mgmt. Servs.*, 99 F.3d at 949.  Novation also fails to plead sufficient facts to support other elements of these claims as described below.

A.    **Novation's Monopolization Claim Fails for the Additional Reason That It Does Not Allege the Willful Acquisition or Maintenance of Monopoly Power.**

A Section 2 violation requires, in addition to possession of monopoly power in the relevant market, "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product,

business acumen, or historic accident."[8] *Verizon Communications, Inc.*, 540 U.S. at 407.  The Supreme Court has explained:

> [t]he mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system. The opportunity to charge monopoly prices—at least for a short period— is what attracts "business acumen" in the first place; it induces risk taking that produces innovation and economic growth. To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct.*

*Id.*  "Anticompetitive conduct is behavior that tends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way."  *Cascade Health Solutions v. PeaceHealth*, 515 F. 3d 883, 894 (9th Cir. 2008).

Novation fails to plead any anticompetitive conduct that would support the willful acquisition or maintenance of monopoly power.  In fact, the Complaint does not even pay lip-service to this essential element of the monopolization claim and the conduct alleged in the Complaint does not satisfy this requirement.

### 1.   <u>There is nothing anticompetitive about Defendants' bidding on Google AdWords.</u>

The Complaint fails to allege any plausible facts to explain how Defendants' bidding for top search positions on Google AdWords is anticompetitive; to the contrary, it is the free-market system at work with the top search positions going to the highest bidder on each search term.  Complaint ¶ 13 ("[A]dvertisers using the

---

[8]   The monopolization claim fails for the additional reason that even though Novation has alleged a high market share, it does not allege barriers to entering the relevant market.  *United States v. Syufy Enterprises*, 903 F.2d 659, 664 (9th Cir. 1990) ("A high market share, though it may ordinarily raise an inference of monopoly power, will not do so in a market with low entry barriers or other evidence of a defendant's inability to control prices or exclude competitors.");  *accord, Sunbelt Television, Inc. v. Jones Intercable, Inc.*, 795 F. Supp. 333, 336-337 (C.D. Cal. 1992) (dismissing claims where there was "no indication from the complaint that the barriers to entry in the local cable television market are such that neither plaintiff nor another cable company cannot market its own cable services").

1  AdWords system compete with one another to achieve a relatively higher position in
2  Google's 'paid search' rankings, bidding more to achieve a higher ranking.").

3        To the extent Novation contends that Defendants' conduct resembles
4  predatory bidding by "crowd[ing] out competitors and/or driv[ing] up the cost of
5  being in second or third position in any given search ranking" (Complaint ¶ 23), the
6  Complaint fails to state such a claim. "In a predatory-bidding scheme, a purchaser
7  of inputs 'bids up the market price of a critical input to such high levels that rival
8  buyers cannot survive (or compete as vigorously) and, as a result, the predating
9  buyer acquires (or maintains or increases its) monopsony power.'" *Weyerhaeuser v.*
10 *Ross-Simmons Hardwood Lumber*, 549 U.S. 312, 320 (2007).   As the Supreme
11 Court explained in *Weyerhaeuser*:

12        [A]ctions taken in a predatory-bidding scheme are often 'the very
13        essence of competition' [citations omitted] . . . . There are myriad
           legitimate   reasons—ranging   from   benign   to   affirmatively
14        procompetitive—why a buyer might bid up input prices.   A more
           efficient firm might bid up input prices to acquire more inputs as a part
15        of a procompetitive strategy to gain market share in the output market. .
16        . . There is nothing illicit about these bidding decisions. Indeed, this
           sort of high bidding is essential to competition and innovation on the
17        buy side of the market.
18
19 549 U.S. at 323-4.

20        Thus, "given the multitude of procompetitive ends served by higher bidding
21 for inputs, [there is] the risk of chilling procompetitive behavior with too lax a
22 liability standard [...]." *Id.* at 325.   Therefore, the Supreme Court has held in order
23 to state a claim for predatory bidding, a "plaintiff must prove that the alleged
24 predatory bidding led to below-cost pricing of the predator's outputs."   *Id.*
25 Additionally, the plaintiff must prove "the defendant has a dangerous probability of
26 recouping the losses incurred in bidding up input prices through the exercise of
27 monopsony power.   Absent proof of likely recoupment, a strategy of predatory
28 bidding makes no economic sense because it would involve short-term losses with

1   no likelihood of offsetting long-term gains." *Id.*  Novation fails to allege either of

2   these elements to support such a claim.[9]  "The purpose of the [Sherman] Act is not

3   to protect businesses from the working of the market; it is to protect the public from

4   the failure of the market.   The law directs itself not against conduct which is

5   competitive, even severely so, but against conduct which unfairly tends to destroy

6   competition itself." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).

7   There is nothing anticompetitive about Defendants' bidding to obtain the top search

8   positions.

9                   **2.      Defendants' maintenance of separate brands is not**

10                  **anticompetitive.**

11          Novation makes much of the notion that post-merger, J.G. Wentworth and

12   Peachtree continue to maintain separate brands despite common ownership,

13   suggesting that this is somehow unlawful or anticompetitive.  Not so.  Companies

14   routinely maintain and promote multiple brands within the same product category.

15   For example, General Motors commonly owns yet maintains separate brands for

16   Chevrolet, Cadillac, Buick and GMC.  General Mills commonly owns yet maintains

17   separate brands for multiple cereals.  There are no allegations plausibly suggesting

18   that such conduct is anticompetitive.  Indeed, a competitor has the right to compete

19   by using different brands and aggressively advertising.  *Drop Dead Co. v. S. C.*

20   *Johnson & Son, Inc.,* 326 F.2d 87, 95-96  (9th Cir. 1963) (rejecting antitrust claim

21   based on defendant's mass advertising and use of multiple brands noting that "[a]ll

22   of these acts described above are up to this date lawful acts, and constitute the sort

23   of aggressive competition and promotion that antitrust law seeks to protect").

24

25   _____

26   [9]   Indeed, it is unlikely that Novation could ever meet this stringent standard to
     establish predatory bidding.  Even assuming Google AdWords is a critical input,
27   Defendants could never obtain more than two of the top four spots in Google
     AdWords search positions on any particular search term and therefore, could never
28   preclude other competitors, including Novation, from obtaining the other spots.

Nor does Novation establish anticompetitive conduct based on its allegation that Defendants' maintenance of separate brands is somehow "deceiving consumers" who are not "getting the full benefits of competitive bidding" when "seeking to shop among competing structured settlement buyers".  Complaint ¶ 28; *see also*, *Id*. ¶27 ("It is this duplicity in making it appear to the public that J.G. Wentworth and Peachtree are still competitors that is a material part of the Sherman Act § 2 claim.").   In order for false or misleading advertising to constitute exclusionary conduct for purposes of the willful acquisition or maintenance of monopoly power, a plaintiff must "overcome a presumption that the effect on competition [...] was de minimis." *American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal and Professional Publications, Inc*., 108 F.3d 1147, 1152 (9th Cir. 1997).  To overcome this presumption, the plaintiff must come forward with proof that "the representations were [1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals."  *Id.* at 1152 ("American must satisfy all six elements to overcome de minimis presumption. Otherwise, American fails to prove its claim.").  Novation fails to allege any facts supporting these six factors.  Accordingly, Novation's Sherman Act claim based on Defendants' alleged "deception" fails as well.

There are simply no plausible factual allegations in the Complaint to support a willful acquisition or maintenance of monopoly power.  As such, Novation's Section 2 monopolization claim must be dismissed for this reason as well.

**B.**   **Novation Fails to Allege Anticompetitive Conduct or Specific Intent to Support Its Attempted Monopolization Claim.**

As noted above, a Section 2 claim for attempted monopolization requires a plaintiff to prove, among other things, a specific intent to control prices or destroy competition and predatory or anticompetitive conduct to accomplish the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1  monopolization.  *Cost Mgmt. Servs.*, 99 F.3d at 950.  Novation's complaint fails to

2  allege either element.  First, the Complaint does not include any factual allegations

3  to support a specific intent to control prices or destroy competition on behalf of

4  Defendants; in fact, intent is nowhere mentioned in the Complaint.  The failure to

5  plead this requisite element also subjects this claim to dismissal.[10]

6        Second, as explained above, Novation fails adequately to allege any predatory

7  or anticompetitive conduct to support its attempted monopolization claim.

8  Accordingly, this claim should be dismissed for these reasons as well.

9  **IV.  NOVATION FAILS TO PLEAD A VIABLE CLAIM FOR BID**

10       **RIGGING.**

11        Although Novation claims that J.G. Wentworth and Peachtree are engaged in

12  "bid rigging" with respect to Google AdWords, it fails to adequately allege such a

13  claim to support an antitrust violation.  Bid rigging arises from "an *agreement*

14  *between competitors* pursuant to which contract offers are to be *submitted to or*

15  *withheld from a third party.*" *U.S. v. Reicher,* 983 F.2d 168, 170 (10th Cir.1992)

16  (emphasis added); *Love v. Basque Cartel*, 873 F. Supp. 563, 577 (D. Wyo. 1995)

17  ("Without an illegally cooperative competitor, the plaintiffs' charge of bid rigging

18  vanishes.").  As Judge Posner explained in *United States v. Heffernan*, 43 F.3d 1144

19  (7th Cir. 1994), "bid rigging" means "bid rotation," which involves an agreement

20  between competitors that "for each job the competitors agree which of them shall be

21  the low bidder, and the others submit higher bids to make sure the designated bidder

22  wins."  43 F.3d at 1146, 1150.

23        Because bid rigging requires an agreement among *competitors*, any such

24  claim would be a violation of Section 1 of the Sherman Act, not Section 2, which

---

[10] Although Novation makes passing reference to a "conspiracy to monopolize," it
fails to allege any specific facts to support this claim.  Such a claim would fail for
the additional reason that Defendants' common ownership would render them a
single economic actor incapable of conspiring.  *See Copperweld Corp. v.
Independence Tube Corp.*, 467 U.S. 752, 776 (1984).  Additionally, a conspiracy to
monopolize also requires specific intent which Novation fails to allege.

1    only involves unilateral conduct. *Copperweld*, 467 U.S. at 767 ("The conduct of a
2    single firm is governed by § 2 alone, and is unlawful only when it threatens actual
3    monopolization."). Novation does not allege a violation of Section 1. *See*
4    Complaint ¶¶ 1, 15, 33. Nor can Novation establish that J.G. Wentworth and
5    Peachtree are competitors for purposes of a bid rigging claim because of their
6    common ownership. *Copperweld*, 467 U.S. at 776 (holding that Section 1
7    conspiracy claims cannot survive based on alleged conspiracy between parent and
8    wholly-owned subsidiary). In fact, Novation alleges throughout its Complaint that
9    J.G. Wentworth and Peachtree should be treated as a single enterprise post-merger,
10   relying on their combined market-shares as a basis for its claims. Complaint ¶¶ 9,
11   15, 27. As a result, there can be no Section 1 bid-rigging conspiracy between
12   Defendants.

13        This claim also fails because there is no allegation that Novation has been
14   foreclosed from bidding in competition with Defendants. *See Love,* 873 F. Supp. at
15   578 (dismissing bid rigging claim based in part on plaintiffs' failure "to present
16   evidence that they were prevented -- by anything other than their own lack of
17   financial resources -- from competing against [defendants] for the ranch in its
18   entirety […].". Indeed, Novation concedes that Defendants are only able to obtain
19   two of the top four search term positions, leaving room for other competitors.
20   Complaint ¶ 23. Nor is Novation's bid rigging theory plausible. If the theory is that
21   Defendants now coordinate their bidding in a such way that they pay less than they
22   did before the merger to be first or second on the search rankings, that can only *help*
23   Novation because it is easier for it to leapfrog over both Defendants' bids by bidding
24   more. If Novation's theory is that Defendants are unreasonably bidding up the price
25   of the bids, that would be a form of predatory bidding and, as explained above,
26   Novation has failed to satisfy the necessary requirements for alleging such a "rarely
27   successful" claim. *Weyerhaeuser*, 549 U.S. at 323.

28        Finally, Novation's bid rigging claim fails because Google, the entity

-23-
CASE NO. 2:15-cv-00954
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1  awarding the "winning bid" is allegedly aware of and complicit in the bid rigging.

2  *See, e.g.,* Complaint ¶ 30 ("*Google, as a conscious and willing participant* with J.G.

3  Wentworth and Peachtree, has played and continues to play a crucial and necessary

4  role in enabling this 'scam'")(emphasis added); *see also Id.* ¶¶ 10, 24, 29, 31.  In a

5  bid rigging conspiracy, the competitors conspire to obtain the winning bid from the

6  *selling party* at a depressed price because they agree not to compete amongst each

7  other.  *See Jetaway Aviation LLC v. County of Montrose*, 2012 WL 1044304, at *3

8  (D. Colo. March 28, 2012) (Bid rigging involves "horizontal competitors who agree

9  on which bidder will win the contest.").  Thus, for a valid bid rigging claim, the

10 seller cannot be aware of, or participate in, the bid rigging.  *Ruotolo v. Fannie Mae*,

11 933 F. Supp. 2d 512, 521 (S.D.N.Y. 2013) (rejecting bid rigging claim when seller

12 Fannie Mae was allegedly part of conspiracy); *Jetaway*, 2012 WL 1044304 at *3 (no

13 claim for bid rigging when County had preselected defendant before RFP process);

14 L-3 *Communications v. Jaxon Engineering & Maintenance, Inc*., 863 F. Supp. 2d

15 1066, 1088-1089 (D. Colo. 2012).  Novation's allegation that Google is complicit in

16 the alleged bid rigging defeats the bid rigging claim on this ground as well.

17 **V.      NOVATION FAILS TO ALLEGE A PROPER RELEVANT MARKET.**

18        Claims under Section 7 of the Clayton Act and Section 2 of the Sherman Act

19 both require a relevant market.  *Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.*, 433

20 Fed. App'x 598, 598-99 (9th Cir. 2011) (relevant market is a required element of

21 Clayton Act Section 7 claim); *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875

22 F.2d 1369, 1373 (9th Cir. 1989) (alleging the relevant market is an "indispensable"

23 requirement of plaintiff's monopolization and attempted monopolization claims).

24 "Failure to identify a relevant market is a proper ground for dismissing a Sherman

25 Act claim." *Tanaka v. Univ. of Southern California*, 252 F.3d 1059, 1063 (9th Cir.

26 2001) (granting 12(b)(6) motion for lack of relevant market).

27        The term "relevant market" encompasses notions of geography as well as

28 product use, quality, and description.  The geographic market extends to the area of

1    effective competition where buyers can turn for alternative sources of supply.  The
2    product market includes the pool of goods or services that enjoy reasonable
3    interchangeability of use and cross-elasticity of demand.  *Tanaka*, 252 F.3d at 1063.
4    To survive a motion to dismiss, the relevant market definition must encompass the
5    product at issue *as well as all economic substitutes for the product.   Newcal Indus.*
6    *v. Ikon Office Solutions*, 513 F.3d 1038, 1045 (9th Cir. 2008).

7         Here, the Complaint states only that "[t]he relevant product market in these
8    antitrust claims is the factoring of structured settlement payment rights.   The
9    relevant geographic market is the United States." Complaint ¶ 15.   There are no
10   factual allegations regarding the reasonable interchangeability of use or cross-
11   elasticity of demand of this proposed market.   Nor is there any discussion of
12   economic substitutes for the alleged product market.   Such a conclusory and
13   factually unsupported market definition is insufficient to survive a motion to
14   dismiss.  *Tanaka*, 252 F.3d at 1063-1064 ("[Plaintiff's] conclusory assertion that the
15   'UCLA women's soccer program' is 'unique' and hence 'not interchangeable with
16   any other program in Los Angeles' is insufficient.").   Thus, the Court may properly
17   dismiss the Complaint for failure to adequately define the relevant product market.

18                                    **Conclusion**

19        For all the foregoing reasons, the Court should dismiss the Complaint.

20   DATED: April 6, 2015              QUINN EMANUEL URQUHART &
21                                      SULLIVAN, LLP

22                                 By  */s/ Michael Williams*
23                                     Harold A. Barza (Bar No. 80888)
                                       Michael E. Williams (Bar No. 181299)
24                                     Counsel for Defendants The J.G.
                                       Wentworth Company, LLC, The J.G.
25                                     Wentworth Company, J.G. Wentworth
                                       S.S.C. Limited Partnership, and
26                                     PeachHoldings, LLC
27
28