BLECHER COLLINS PEPPERMAN & JOYE, P.C.
Maxwell M. Blecher (State Bar No. 26202)
mblecher@blechercollins.com
Courtney A. Palko (State Bar No. 233822)
cpalko@blechercollins.com
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

Attorneys for Plaintiff
NOVATION VENTURES, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NOVATION VENTURES, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> THE J.G. WENTWORTH COMPANY, LLC, a Delaware limited liability company, formerly known as JGWPT HOLDINGS, LLC; THE J.G. WENTWORTH COMPANY, a Delaware corporation, formerly known as JGWPT, INC.; J.G. WENTWORTH S.S.C. Limited Partnership, a Nevada limited partnership; and PEACH HOLDINGS, LLC, a Delaware limited liability company dba PEACHTREE FINANCIAL SOLUTIONS, <br><br> Defendants. | Case No. 2:15-CV-00954-BRO-PJW <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** <br><br> Date:    May 18, 2015 <br> Time:    1:30 p.m. <br> Crtrm.:   14 <br><br> Hon. Beverly Reid O'Connell |

Blecher Collins
Pepperman & Joye

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

STATEMENT OF FACTS ............................................................................ 1

ARGUMENT................................................................................................. 1

I.  Novation Has Properly Alleged Facts Giving Rise to a Facially Plausible Claim to Survive a Motion to Dismiss................................. 1

    A.  Legal Standard ...................................................................... 1

    B.  Defendants Are Unable to Cite Any Authority Supporting Dismissal of an Antitrust Case on the Bases Set Forth in Their Motion .......................................................................... 3

    C.  Novation's Well-Pleaded Factual Allegations Give Rise to a Facially Plausible Claim ..................................................... 5

II.  Novation Has Properly Alleged a Plausible Claim under Section 2 of the Sherman Act and Section 7 of the Clayton Act ......................... 6

    A.  Novation Has Properly Alleged Antitrust Injury ................. 7

    B.  Novation Has Properly Alleged Anticompetitive Conduct ............... 10

    C.  Novation Has Alleged Specific Intent to Monopolize ....................... 16

    D.  Novation Has Alleged a Dangerous Probability of Achieving Monopoly Power ......................................................... 16

III.  Novation Has Properly Alleged a Plausible Relevant Product Market, Which Involves a Fact-Intensive Inquiry ...................................... 16

IV.  If the Court Finds the Pleadings Deficient, Novation Requests Leave to Amend the Complaint ..................................................... 20

CONCLUSION ............................................................................................ 20

Blecher Collins
Pepperman & Joye

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP,*
592 F.3d 991 (9th Cir. 2010) ........................................................................ 4

*AlliedSignal, Inc. v. B.F. Goodrich Co.,*
183 F.3d 568 (7th Cir. 1999) ....................................................................... 13

*Ansell Inc. v. Schmid Labs., Inc.,*
757 F. Supp. 467 (D.N.J. 1991) ................................................................... 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................................... 2

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
472 U.S. 585 (1985) ................................................................................ 12, 13

*Barr Labs., Inc.,*
386 F.3d 485 (2d Cir. 2004) ......................................................................... 19

*Beatrice Foods Co. v. FTC,*
540 F.2d 303 (7th Cir. 1976) ....................................................................... 19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................................... 2

*Broam v. Bogan,*
320 F.3d 1023 (9th Cir. 2003) ....................................................................... 2

*Brown Shoe Co. v. United States,*
370 U.S. 294 (1962) ..................................................................................... 18

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977) ................................................................................. 3, 8, 9

*Cal. Computer Prods., Inc. v. IBM Corp.,*
613 F.2d 727 (9th Cir. 1979) ......................................................................... 3

*California v. Am. Stores Co.,*
495 U.S. 271 (1990) ..................................................................................... 14

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
479 U.S. 104 (1986) ............................................................................. 3, 9, 10

*Catch Curve, Inc. v. Venali, Inc.,*
519 F. Supp. 2d 1028 (C.D. Cal. 2007) ......................................................... 2

*Conley v. Gibson,*
355 U.S. 41 (1957) ....................................................................................... 20

*Cost Management Services, Inc. v. Washington Natural Gas Co.,*
99 F.3d 937 (9th Cir. 1996) ............................................................... 4, 10, 20

Blecher Collins
Pepperman & Joye

*Datel Holdings Ltd. v. Microsoft Corp.*,
712 F. Supp. 2d 974 (N.D. Cal. 2010)................................................17, 20

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987)....................................................................20

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010)...................................................17

*E.W. French & Sons, Inc. v. Gen. Portland Inc.*,
885 F.2d 1392 (9th Cir. 1989)..................................................................12

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992)...........................................................10, 13, 18, 19

*Erickson v. Pardus*,
551 U.S. 89 (2007)....................................................................................2

*Fineman v. Armstrong World Indus., Inc.*,
980 F.2d 171 (3d Cir. 1992) ....................................................................19

*Foman v. Davis*,
371 U.S. 178 (1962)..................................................................................20

*Forsyth v. Humana, Inc.*,
114 F.3d 1467 (9th Cir. 1997)..................................................................17

*Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246 (9th Cir. 1997) ....................................................................2

*Greyhound Computer Corp. v. IBM Corp.*,
559 F.2d 488 (9th Cir. 1977) ...........................................................12, 15

*Grumman Corp. v. LTV Corp.*,
527 F. Supp. 86 (E.D.N.Y. 1981) ............................................................19

*Hosp. Bldg. Co. v. Trustees of Rex Hosp.*,
425 U.S. 738 (1976)..................................................................................2

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997) .......................................................10, 12, 13

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ....................................................................20

*Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
701 F.2d 1276 (9th Cir. 1983) ..................................................................20

*Laidlaw Acquisition  Corp. v. Mayflower Group, Inc.*,
636 F. Supp. 1513 (S.D. Ind. 1986)..........................................................13

*LePage's Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003) ...........................................................10, 12

*Loehr v. Ventura County Cmty. Coll. Dist.*,
743 F.2d 1310 (9th Cir. 1984) ..................................................................20

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
275 F.3d 762 (9th Cir. 2001) ...........................................................18, 19

Blecher Collins Pepperman & Joye

iii

*Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*,
  140 F.3d 1228 (9th Cir. 1998) ...............................................................4
*Miller v. Rykoff-Sexton, Inc.*,
  845 F.2d 209 (9th Cir. 1988) ................................................................20
*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) ..............................................................20
*Moss v. United States Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ...........................................................2, 20
*Movie 1 & 2 v. United Artists Communications, Inc.*,
  909 F.2d 1245 (9th Cir. 1990) ..............................................................12
*Newcal Industries, Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008) ........................................................passim
*Paladin Assocs., Inc. v. Montana Power Co.*,
  328 F.3d 1145 (9th Cir. 2003) ...........................................................4, 17
*Pool Water Prods. v. Olin Corp.*,
  258 F.3d 1024 (9th Cir. 2001) ................................................................3
*Purex Corp. v. The Proctor & Gamble Co.*,
  596 F.2d 881 (9th Cir. 1979) ..................................................................3
*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) .............................................................3, 11
*Rosenberg Bros. & Co. v. Arnold*,
  283 F.2d 406 (9th Cir. 1960) ................................................................20
*Saint Alphonsus Medical Center-Nampa Inc. v. St. Luke's Health System, Ltd.*,
  778 F.3d 775 (9th Cir. 2015) ................................................................14
*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
  506 F.3d 832 (9th Cir. 2007) ..................................................................2
*SmithKline Corp. v. Eli Lilly & Co.*,
  575 F.2d 1056 (3d Cir. 1978) ...............................................................10
*Sprint Nextel Corp. v. AT&T Inc.*,
  821 F. Supp. 2d 308 (D.D.C. 2011) ........................................................4
*Sullivan v. NFL*,
  34 F.3d 1091 (1st Cir. 1994) ................................................................13
*Syufy Enters. v. Am. Multicinema, Inc.*,
  793 F.2d 990 (9th Circ. 1986) ..............................................................18
*Tasty Baking Co. v. Ralston Purina, Inc.*,
  653 F. Supp. 1250 (E.D. Pa. 1987) .......................................................13
*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
  546 F.3d 991 (9th Cir. 2008) ................................................................17
*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
  875 F.2d 1369 (9th Cir. 1989) ..............................................................17

*United States v. Black & Decker Mfg. Co.*,
   430 F. Supp. 729 (D. Md. 1976)..................................................................19
*United States v. Cont'l Can Co.*,
   378 U.S. 441 (1964)..................................................................................17
*United States v. Dentsply Int'l, Inc.*,
   399 F.3d 181 (3d Cir. 2005) ....................................................................12
*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966)..................................................................................10
*United States v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001)..............................................................11, 12
*United States v. Webb*,
   655 F.2d 977 (9th Cir. 1981) ..................................................................20
*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
   588 F.3d 659 (9th Cir. 2009) ....................................................................2

STATUTES

15 U.S.C. § 2 ..........................................................................................10, 11

RULES

Fed. R. Civ. P. 8..........................................................................................2
Fed. R. Civ. P. 12(b)(6) ......................................................................passim
Fed. R. Civ. P. 15 ......................................................................................20
Fed. R. Civ. P. 15(a)(2)..............................................................................20

MISCELLANEOUS

1 ABA Section of Antitrust Law, Antitrust Law Developments 612
   (6th ed. 2007) ........................................................................................17

Blecher Collins
Pepperman & Joye

**INTRODUCTION**

Plaintiff Novation Ventures, LLC ("Novation") respectfully submits this memorandum of points and authorities in opposition to Defendants' motion to dismiss Novation's Complaint (Dkt. 17).

Defendants' contention that the detailed factual allegations of this Complaint do not plausibly or adequately allege facts that satisfy each and every element of the claims lacks merit.  As Novation demonstrates, this Complaint easily satisfies the *Twombly* (or any other pleading standard) test, particularly given that the factual allegations of the Complaint are to be liberally construed and all reasonable inferences are to be drawn in favor of Novation.

Contrary to well-established principles governing motions to dismiss in federal court, Defendants, in seeking dismissal, have ignored many of the express factual allegations in the Complaint and have drawn inferences in their favor, as opposed to Novation's favor.  Moreover, Defendants raise numerous issues which cannot be appropriately resolved at this stage solely on the pleadings.  For the reasons discussed below, Novation respectfully requests that the Court deny Defendants' motion to dismiss in its entirety.

**STATEMENT OF FACTS**

Because the Court must accept as true all well-pleaded facts, and give Novation all reasonable inferences flowing from those alleged facts, Novation proposes that the Court adopt the Complaint as its factual basis, much as Defendants have done in drafting their motion to dismiss.

**ARGUMENT**

**I.    Novation Has Properly Alleged Facts Giving Rise to a Facially Plausible Claim to Survive a Motion to Dismiss**

**A.    Legal Standard**

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are generally disfavored.  They are to be rarely granted and then only in extreme

circumstances.  *See, e.g.*, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976)*; *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1034 (C.D. Cal. 2007).

In ruling on a motion to dismiss, the court must accept as true all factual allegations in the Complaint, and must draw all reasonable inferences from those allegations, construing the Complaint liberally in the light most favorable to Novation.  *Moss v. United States Secret Serv.*, 572 F.3d 962, 967-68 (9th Cir. 2009); *William O. Gilley Enters., Inc. v. Atl. Richfield Co.,* 588 F.3d 659, 662 (9th Cir. 2009) (per curiam); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

Nothing more than notice pleading is required.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  Rule 8 of the Federal Rules of Civil Procedure requires, not a specific quantity of facts, but simply "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Specific facts are not necessary," and a complaint need only give the defendant fair notice of the claims and grounds upon which they rest.  *Erickson,* 551 U.S. at 93; *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841 (9th Cir. 2007); *Twombly*, 550 U.S. at 555 (detailed factual allegations are not required); *see also* *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The factual allegations of the Complaint need only "be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555; *see Skaff*, 506 F.3d at 841-42 (*Twombly* did not impose heightened pleading standards). There must simply be "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Finally, *Twombly* was a case in which the question was whether purely circumstantial evidence permitted a plausible or reasonable inference of conspiracy.

1   By contrast, this is a single entity case in which there is little mystery about what

2   occurred.

3       Novation's Complaint sufficiently meets this liberal pleading standard and

4   should not be dismissed.

5   **B.**    **Defendants Are Unable to Cite Any Authority Supporting**

6             **Dismissal of an Antitrust Case on the Bases Set Forth in Their**

7             **Motion**

8       Defendants argue that the Complaint fails to sufficiently allege antitrust

9   injury; does not sufficiently allege anticompetitive conduct; and does not identify

10   the relevant market with specificity.  They are simply wrong.  Indeed, it is

11   remarkable that Defendants cite no Rule 12(b)(6) case dismissing an antitrust claim

12   on these bases.  This is because proving such contentions is intrinsically factual and

13   not an appropriate predicate for Rule 12(b)(6) dismissal.

14       Each of the following cases, cumulatively relied on by Defendants as their

15   main authorities, was decided either after trial or full factual development on

16   summary judgment:

| | | |
|---|---|---|
| *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) | Supreme Court | Trial |
| *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986) | Supreme Court | Trial |
| *Purex Corp. v. The Proctor & Gamble Co.*, 596 F.2d 881 (9th Cir. 1979) | Ninth Circuit | Trial |
| *Cal. Computer Prods., Inc. v. IBM Corp.*, 613 F.2d 727 (9th Cir. 1979) | Ninth Circuit | Trial |
| *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024 (9th Cir. 2001) | Ninth Circuit | Summary Judgment (on eve of trial) |

Blecher Collins Pepperman & Joye

3

| | | |
|---|---|---|
| *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) | Ninth Circuit | Summary Judgment |
| *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003) | Ninth Circuit | Summary Judgment |
| *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991 (9th Cir. 2010) | Ninth Circuit | Summary Judgment |

Even more remarkable is Defendants' citation to the Ninth Circuit decisions in *Cost Management Services, Inc. v. Washington Natural Gas Co.*, 99 F.3d 937 (9th Cir. 1996) and *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228 (9th Cir. 1998), where the Court actually <u>reversed</u> a lower court ruling sustaining a motion to dismiss in an antitrust case charging violations of Section 2 of the Sherman Act, where like here, several acts combined together to cause the claimed injury.  Similarly, in *Sprint Nextel Corp. v. AT&T Inc.*, 821 F. Supp. 2d 308 (D.D.C. 2011), also cited by Defendants, the district court for the District of Columbia *allowed* two AT&T competitors (Sprint and Cellular South) to pursue an antitrust claim to enjoin AT&T's acquisition of T-Mobile – a precedent which hardly supports a motion for dismissal.

There is, therefore, virtually a complete absence of authority in the Supreme Court or this Circuit authorizing dismissal at this stage of the proceedings on the fact-intensive grounds asserted by Defendants.[1]  Indeed, in the cases cited by Defendants which are closest to this—*Cost Management* and *Lucas*—there was no Rule 12(b)(6) dismissal.  Rather, in those cases, the district court allowed the plaintiff to develop its factual record but then granted *summary judgment* for

---

[1] In fact, the Honorable Dolly M. Gee recently considered and denied a motion to dismiss an antitrust complaint, in which the defendant raised many of the same legal issues, including relevant market definition, anticompetitive conduct, and antitrust injury.  *Signature MD, Inc. v. MDVIP, Inc.*, No. 14-cv-05453-DMG-SS, Dkt. 65, Order re Defendant's Motion to Dismiss at 5-12, (C.D. Cal. Apr. 21, 2015).

1  defendants.  And the Ninth Circuit reversed that grant of summary judgment,

2  holding that the district court had erred in not permitting the antitrust plaintiffs to

3  prove their claims at trial.

4  **C.    Novation's Well-Pleaded Factual Allegations Give Rise to a**

5  **Facially Plausible Claim**

6  The essence of this antitrust case is that Defendants merged the two largest

7  competitors in the business of factoring structured settlements (the relevant antitrust

8  product market), which Novation contends violates Section 7 of the Clayton Act.

9  Novation then alleges that Defendants, post-acquisition, engaged in a pattern of

10  deceiving actual and prospective customers that the two commonly-owned entities

11  were separate and true competitors; resulting in Defendants foreclosing, in many

12  cases, the top Google search slots which, as the industry operates, has the inexorable

13  effect of sharply reducing and impairing Novation's competitive ability.  Novation

14  contends that this active anticompetitive conduct, coupled with the merger which

15  enabled it, evidences an intent to monopolize in violation of Section 2 of the

16  Sherman Act.  Novation seeks damages for this foreclosure and injunctive relief to

17  reopen the market to genuine and vigorous competition.

18  There is nothing truncated about these allegations.  There are 14 paragraphs

19  and four pages of detailed allegations explaining who the parties are and essential

20  industry facts; these are followed by 16 detailed paragraphs covering 6 pages

21  explaining how the industry works, the challenged acquisition and its alleged effect

22  on competition within the market infrastructure, and the post-acquisition

23  shenanigans which constitute the attempted monopolization claim causing the

24  consequent injury to Novation.  The key for purposes of this motion is paragraph 35,

25  which recites:

26  By reason of the foregoing, Novation has suffered antitrust
    injury, *i.e.*, injury resulting directly from a reduction in the

27  vigor of the competitive process in the factoring of

28  structured settlements.  Consumers have been deprived of

Blecher Collins
Pepperman & Joye

5

the benefit of competition in that industry and have been effectively deprived of true choice. This injury consists of Novation being foreclosed from the opportunity of competing in the aforesaid relevant product market and continuing to operate as a competitive force in that market. As a result, Novation has been, and will continue to be, deprived of the revenues and profits that it would otherwise have earned in the competitive process. In addition, but for the illegal merger and the subsequent monopolizing conduct, the value of Novation as an ongoing concern would have continued to increase, whereas now its business has a vastly reduced value because it has been substantially neutralized as a competitor as a result of the integration of JG Wentworth and Peachtree and the follow-on anticompetitive conduct. Novation does not now know the exact amount of the damages caused by the conduct described in this claim for relief, but believes such damages to exceed $15,000,000.

Compl. ¶ 35.

This motion is a knee-jerk reaction. Armed with *Twombly*, every antitrust complaint must be challenged as inadequate. To contend that this Complaint does not satisfy the "plausibility" test established by *Twombly* and its companion *Iqbal* borders on frivolous. What could even arguably be implausible about Novation's claim that the merger of the two largest companies in an industry having a combined 70% market share would then be used to squeeze, foreclose, and impair the remaining competitors?

## II.    Novation Has Properly Alleged a Plausible Claim under Section 2 of the Sherman Act and Section 7 of the Clayton Act

Defendants' assumption that Novation has claimed pecuniary injury stemming <u>only</u> from the acquisition itself is a straw man. No such allegation exists in the Complaint. Paragraphs 33, 34, and 35 separately and together make clear that the injury to Novation derives from the "acquisition, <u>taken together</u> with the acts described in paragraphs 1 through 31, inclusive, [which] constitute a violation of

1  Section 2 of the Sherman Act….."  Compl. ¶ 33 (emphasis added).  Paragraph 34

2  refers to the "…merger and the additional conduct…"  *Id.*, ¶ 34 (emphasis added).

3  Paragraph 35 alleges, under the "Injury to Novation" heading, that the "illegal

4  merger and subsequent monopolizing conduct" caused Novation's reduced earnings

5  and loss of going concern value.  *Id.*, ¶ 35 (emphasis added).  Finally, paragraph 26

6  emphasizes that the "root cause of [Novation's] losses is the illegal 2011 merger

7  which has, in turn, led to an unbroken chain of events, producing an anticompetitive

8  scheme calculated to eliminate or reduce competition to JG Wentworth and its

9  former (but now fake) 'competitor' Peachtree."  *Id.*, ¶ 26.[2]

10      Novation does not contend that the acquisition alone caused either antitrust

11  injury or compensable harm.  Reading the Complaint correctly, for what it alleges

12  and not for what it does not allege, it is unnecessary to respond to Defendants'

13  argument (*see* section II of Defs.' Mem.) on that basis.  Instead, Novation addresses

14  the key legal issues: (1) that Novation has properly alleged a violation of Section 2

15  of the Sherman Act in a defined relevant market, and (2) that the violation has the

16  potential to produce antitrust injury.

17      The Complaint alleges a violation of Section 2 of the Sherman Act.  That

18  violation produces both antitrust injury and compensable harm to Novation.

19      **A.    Novation Has Properly Alleged Antitrust Injury**

20      Defendants argue that because the JG Wentworth acquisition of Peachtree

21  reduced the number of competitors, it would have been easier, not harder, for

22  Novation to compete.  But what Novation has alleged is that, building off the base

23  of this unlawful merger, Defendants, acting in concert with Google, have duped

24

25  [2] These allegations also serve to conclusively rebut Defendants' contention that

26  Novation failed to allege (1) the "specific intent" required for attempted
    monopolization claims under Section 2 of the Sherman Act (*see* III.B of Defs.'

27  Mem.); and (2) willful conduct (*see* III.A of Defs.' Mem.).  Novation has alleged

28  both willful conduct and specific intent.

1    thousands of consumers into thinking they were getting competitive offers when the

2    system was rigged to create this false illusion.[3]

3         A substantive antitrust offense must include anticompetitive conduct.  In

4    private litigation – as opposed to government litigation – it must produce actual

5    injury (or for injunctive purposes at least threatened injury).  But in private litigation

6    it is not enough for the anticompetitive conduct to cause the claimed injury.  The

7    plaintiff's injury must be caused by the competition-reducing aspect of the conduct;

8    i.e, plaintiff's injury must flow from the reduction in the vigor of the competitive

9    process which makes the conduct anticompetitive and illegal and not just from the

10   conduct alone.  This element of a private claim is intended to ensure that – as in the

11   seminal case in which the doctrine originated, *Brunswick Corp. v. Pueblo  Bowl-O-*

12   *Mat, Inc.*, 429 U.S. 477 (1977) – a plaintiff does not get windfall damages produced

13   by an increase in competition, a notion which would stand the antitrust law on its

14   head.

15        Novation affirmatively alleges that its injury results "directly from a reduction

16   in the vigor of the competitive process in the factoring of structured settlements."

17   Compl. ¶ 35.  Novation further alleges that "[c]onsumers have been deprived of the

18   benefit of competition…and true choice."  *Id*.  Moreover, Novation has been

19   "foreclosed from the opportunity of competing in the aforesaid relevant market and

20   continuing to operate as a competitive force in that market."  *Id*.  Finally, as a result

21   of the "illegal merger and the subsequent monopolizing conduct," Novation

22

23

---

24   [3] Defendants attack Novation for failing to state a "big rigging" claim.  What is
     described as "bid rigging" is the fraud and duplicity being perpetrated on consumers

25   who are led to believe that the JG Wentworth and Peachtree bids are independent of
     each other and truly competitive.  Regardless of whether it is technically bid rigging,

26   Defendants' conduct is facially anticompetitive and, when coupled with the illegal

27   acquisition, creates a viable claim under Section 2 of the Sherman Act.  That is the

28   offense which creates the antitrust injury.

1  sustained losses in the form of diminished revenues and profits and loss of going

2  concern value.  *Id.*

3       These allegations are precisely the kind of harms the antitrust laws are

4  designed to prevent: (1) reduction in the vigor of the competitive process; (2)

5  consumer harm in the form of reduced competition and choice; and (3) competitor

6  foreclosure from the market.

7       Defendants' contention that Novation has failed to allege antitrust injury – as

8  a matter of law and before discovery – rests first on the faulty premise that this case

9  is based solely on a merger which, according to Defendants, purportedly reduced the

10  intensity of competition faced by Novation.  Second, Defendants rely on a series of

11  "facts" which do not appear on the face of the Complaint and are largely lawyer

12  arguments which require the Court to make fact determinations.  This process goes

13  far beyond the function of a motion to dismiss and would deny Novation due

14  process.

15       Defendants' reliance on *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S.

16  104 (1986) is misplaced.  *Cargill* restated the accepted doctrine that where an act

17  increases competition, it cannot produce antitrust injury.  Antitrust injury must be

18  the product of a reduction in the vigor of the competitive process and necessarily

19  will be lacking if the claimed injury results from more, not less or reduced,

20  competition.  Here, Novation alleged diminished competition through the

21  combination of the two top market participants, coupled with misleading the

22  consuming public into believing that competition between them exists when in

23  reality it does not.  This is precisely the kind of injury the antitrust laws are

24  supposed to protect against.  In *Cargill*, by contrast, the plaintiff asserted, for the

25  first time on appeal, that the challenged merger would produce predatory (below

26  cost) pricing.  The Supreme Court acknowledged that, if established, predatory

27  pricing would be anticompetitive and, therefore, capable of producing antitrust

28  injury.  But on the record below, it reversed the judgment for Monfort on this fact-

Blecher Collins
Pepperman & Joye

9

1   intense finding: "We conclude that Monfort neither raised nor proved any claim of

2   predatory pricing before the District Court." _Id._ at 119.  That determination has no

3   relevance to our case.  Accordingly, Novation has no quarrel with the holding in

4   _Cargill_ (barring predatory pricing claim first asserted only on appeal).  This Court

5   can disregard its application here because it has no bearing on the facts alleged in

6   the Complaint.

7        For these reasons, Novation has adequately alleged antitrust injury.

8        **B.      Novation Has Properly Alleged Anticompetitive Conduct**

9        Section 2 of the Sherman Act states: "Every person who shall monopolize, or

10   attempt to monopolize, or combine or conspire with any other person or persons, to

11   monopolize any part of the trade or commerce among the several States, or with

12   foreign nations" is guilty of an offense and subject to its penalties.  15 U.S.C. § 2.

13   To satisfy the monopolization claim of Section 2, a plaintiff must allege willful

14   maintenance or acquisition of monopoly power.  _United States v. Grinnell Corp.,_

15   _384 U.S. 563, 570-71 (1966)._  A Section 2 violation generally is sufficiently pled

16   where a plaintiff alleges that defendant: (1) has monopoly power in the relevant

17   market; (2) engaged in exclusionary conduct; and (3) foreclosed rivals.  _Cost Mgmt.,_

18   _99 F.3d at 949_; _LePage's Inc. v. 3M,_ 324 F.3d 141, 146-63 (3d Cir. 2003);

19   _SmithKline Corp. v. Eli Lilly & Co.,_ 575 F.2d 1056, 1062, 1065 (3d Cir. 1978).  In

20   charging attempts to monopolize, Novation must establish specific intent to

21   monopolize.  _Cost Mgmt.,_ 99 F.3d at 950.

22        In addition to possessing or seeking to achieve monopoly power, a defendant

23   must also engage in exclusionary conduct to run afoul of Section 2.  _Id._; _Eastman_

24   _Kodak Co. v. Image Tech. Servs., Inc.,_ 504 U.S. 451, 482 (1992).  "Exclusionary

25   conduct refers to practices that unreasonably or unnecessarily impede fair

26   competition; that is, conduct that impairs the efforts of others to compete for

27   customers in an unnecessarily restrictive way." _Image Tech. Servs., Inc. v. Eastman_

28   _Kodak Co.,_ 125 F.3d 1195, 1211 n.6 (9th Cir. 1997).  "'The [Sherman Act] directs

Blecher Collins
Pepperman & Joye

1  itself not against conduct which is competitive, even severely so, but against

2  conduct which unfairly tends to destroy competition itself.'" *United States v.*

3  *Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001) (citation omitted).

4      Here, the anticompetitive conduct consists of JG Wentworth (40% market

5  share) acquiring Peachtree (30% market share) to (1) eliminate its main rival as a

6  competitor and (2) produce a market share with monopoly numbers.  While this

7  acquisition cannot withstand scrutiny under Section 7 of the Clayton Act, Novation

8  does not rely on the merger, standing alone, to produce either an anticompetitive

9  effect (an element of the substantive antitrust offense) or antitrust injury (an element

10  of Novation's claim for relief).  Rather, the Complaint alleges that JG Wentworth

11  and Peachtree are falsely palming off Peachtree as a true independent competitor

12  both "crowds out competitors [including Novation] and/or drives up the cost of"

13  getting to a favorable position where the prospect of getting a consumer call to bid is

14  enhanced.  Compl. ¶ 23.  The Complaint also states:

> After the acquisition/merger…, a common ownership and
> management entity, maintains and promotes both brands,
> running ads for both JG Wentworth and Peachtree as
> though they continue to be separate, competitive entities
> when in fact they are commonly owned and managed.  **It
> is this duplicity in making it appear to the public that
> JG Wentworth and Peachtree are still competitors
> that is a material part of the Sherman Act § 2 claim.**

21  *Id*. ¶ 27 (emphasis added).  And Novation specifically alleges that Defendants have

22  induced and paid internet search providers such as Google to permit and condone

23  this "deception" – leading consumers to believe that when they receive bids from

24  Peachtree and JG Wentworth, they are shopping among competitors when, in fact,

25  JG Wentworth and Peachtree are commonly owned and controlled and do not

26  compete.  *Id*. ¶¶ 28-31.

27      The Ninth Circuit has articulated that "conduct that eliminates rivals reduces

28  competition." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir.

Blecher Collins
Pepperman & Joye

1  1995).  Indeed, "elimination of a single competitor may violate [the Sherman Act] if

2  it harms competition."  *E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d

3  1392, 1401 (9th Cir. 1989).

4      "When a monopolist's actions are designed to prevent one or more new or

5  potential competitors from gaining a foothold in the market by exclusionary, i.e.

6  predatory, conduct, its success in that goal is not only injurious to the potential

7  competitor but also to competition in general."  *LePage's*, 324 F.3d at 159.

8      To show that conduct has an anticompetitive effect, "it is not necessary that

9  all competition be removed from the market.  The test is not total foreclosure, but

10  whether the challenged practices bar a substantial number of rivals or severely

11  restrict the market's ambit."  *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 191

12  (3d Cir. 2005).  Competitors need not be barred "from all means of distribution," if

13  they are barred "from the cost-efficient ones."  *Microsoft*, 253 F.3d at 64.

14      Section 2 of the Sherman Act prohibits a monopolist from employing even

15  independently lawful practices if they unreasonably exclude or foreclose

16  competition to existing or potential competitors in the relevant market.  *Aspen*

17  *Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608-11 (1985);

18  *Greyhound Computer Corp. v. IBM Corp.*, 559 F.2d 488, 498 (9th Cir. 1977).

19  Whether conduct is anticompetitive is a factual question for the jury.  *Movie 1 & 2 v.*

20  *United Artists Communications, Inc.*, 909 F.2d 1245, 1255 (9th Cir. 1990).  A

21  defendant's behavior may fairly be characterized as "predatory" when the market-

22  dominant defendant is "'attempting to exclude rivals on some basis other than

23  efficiency.'"  *Aspen*, 472 U.S. at 605 (citation omitted).  Novation has alleged such

24  exclusionary conduct.  Compl. ¶¶ 17-31.

25      The "conduct" element requires that the monopolist act "'to foreclose

26  competition, to gain a competitive advantage, or to destroy a competitor.'"  *Image*

27  *Tech.*, 125 F.3d at 1208 (citation omitted).  In *Aspen*, the Supreme Court crafted the

28  following standard: it is unlawful for a monopolist to engage in "'conduct which

Blecher Collins
Pepperman & Joye

unnecessarily excludes or handicaps competitors'" in order to acquire or maintain a monopoly. 472 U.S. at 597 (citation omitted); *see also Image Tech.*, 125 F.3d at 1209. Actions restricting consumer choice are inherently anticompetitive. *See, e.g., Sullivan v. NFL*, 34 F.3d 1091, 1101 (1st Cir. 1994). So, too, is conduct that constitutes a "deliberate effort to discourage [a defendant's] customers from doing business with its smaller rival." *Aspen*, 472 U.S. at 610; *see Kodak*, 504 U.S. at 483-84.

The merger of Defendants JG Wentworth and Peachtree (which independently violates Section 7 of the Clayton Act) is an integral part of Defendants' plan to acquire monopoly power in violation of Section 2 of the Sherman Act. That merger alone is <u>not</u> the predicate for Novation's claim of damages. Novation's claim embraces the post-merger tortious acts of deceiving consumers. This anticompetitive conduct has had the effect of foreclosing Novation from effectively competing.

Even a cursory review of Clayton Section 7 cases reveals a probability of success if challenging a merger between the top two industry competitors resulting in a 70% market share. The Herfindahl index, when calculable, will be off the chart. Defendants' suggestion that the Department of Justice and/or FTC's failure to challenge the merger has any preclusive effect is erroneous. In *AlliedSignal, Inc. v. B.F. Goodrich Co.*, 183 F.3d 568 (7th Cir. 1999), a notably conservative antitrust circuit disregarded such a determination in finding the merger unlawful and issuing a preliminary injunction. *Id.* at 574-75. *AlliedSignal* cited to *Tasty Baking Co. v. Ralston Purina, Inc.*, 653 F. Supp. 1250, 1254 (E.D. Pa. 1987) and *Laidlaw Acquisition  Corp. v. Mayflower Group, Inc.*, 636 F. Supp. 1513, 1521 (S.D. Ind. 1986) for the proposition that "[c]ourts do not generally defer to an agency's decision not to challenge a merger." *AlliedSignal*, 183 F.3d at 575. Federal regulators' inability to challenge every potentially troublesome merger is precisely why Congress made private enforcement "an integral part of the congressional plan

1  for protecting competition." *California v. Am. Stores Co.*, 495 U.S. 271, 284

2  (1990).  And presumably, when the merger was proposed to the FTC, that agency

3  was never told that the merged companies intended to carry out a post-merger sham

4  – by leading consumers to believe that they were shopping among brands that

5  appeared to (but did not actually) compete with one another.

6        The rigor of attacking illegal mergers was reaffirmed as recently as February

7  10, 2015, when the Ninth Circuit struck down a merger between two Idaho hospitals

8  in *Saint Alphonsus Medical Center-Nampa Inc. v. St. Luke's Health System, Ltd.*,

9  778 F.3d 775 (9th Cir. 2015).  There, the Ninth Circuit summarizes its opinion by

10  stating that "the Clayton Act does not excuse mergers that lessen competition or

11  create monopolies simply because the merged entity can improve its operations."

12  *Id.* at 792.

13        Here, Novation's claim under Section 2 of the Sherman Act includes as one

14  component act a merger, which, if litigated, would very likely be found unlawful.

15        Defendants claim that neither their cozy arrangement with Google nor the use

16  of separate brands is or could be anticompetitive.  Defs. Mem. at 18-21.  These

17  contentions are factually intense and require the benefit of discovery to properly

18  evaluate.  What if an email or memo notes that the arrangement with Google that

19  Novation challenges as anticompetitive is described in those terms?  What if

20  Defendants persuaded Google to permit them to buy two or three simultaneous

21  listings by assuring Google that their brands competed with one another when, in

22  fact, they do not?  What if an internal email or memo describes how Defendants' use

23  of seemingly competing brands can mislead the public and dampen genuinely

24  competitive shopping?  What if it can be shown that JG Wentworth and/or Peachtree

25  offer less for structured settlement payments when a consumer is shopping among

26  those two apparently (but not actually) competing brands; but bid super-aggressively

27  when a consumer manages to find a genuine competitor such as Novation?  This

28  information is solely within the possession of the Defendants and third parties.

Blecher Collins
Pepperman & Joye

14

1   Novation cannot, and this Court should not, determine at this stage – as a matter of

2   law – that such conduct is not anticompetitive.  These topics are not suitable for

3   disposition on a motion to dismiss before discovery.  Defendants and their

4   sophisticated counsel know that.

5        In response to Defendants' passing reference to entry barriers (Defs.' Mem. at

6   18 n.8), Novation respectfully invites the Court's attention to *Greyhound Computer,*

7   *559 F.2d at 502-03*.  Explaining the concept of market power maintained by

8   unnecessarily restrictive or exclusionary conduct, the Ninth Circuit stated: "'They

9   are contracts, arrangements, and policies which, instead of encouraging competition

10  based on pure merit, further the dominance of a particular firm.  In this sense, they

11  are unnatural barriers; they unnecessarily exclude actual and potential competition;

12  they restrict a free market.'"  *Id. at 502-03* (citation omitted).

13       In short, entry barriers are inexorably and necessarily parts of cases like this.

14  Barriers are also expressly alleged.  *See, e.g.,* Compl. ¶¶ 23-31 (explaining the scam

15  on consumers), ¶ 8 (explaining requirements for capital to fund transactions), ¶ 17

16  ("handful of competitors"), ¶ 21 (judicial approval of transactions).

17       Defendants make a laborious argument with facts which are mostly *dehors*

18  the record that their conduct is somehow commendable because it promotes

19  competition.  It is theoretically possible that they have spent tens of millions of

20  dollars perpetrating the illusion of competition all in a selfless effort to promote

21  consumer welfare.  But this is not the time or place to decide that.  First, the parties

22  need to conduct discovery and then litigate such questions at summary judgment.

23  Whether conduct promotes or enhances competition is a paradigmatic fact issue and

24  incapable of resolution on a Rule 12(b)(6) motion.  As the Ninth Circuit observed in

25  *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008):

26       Our review is limited to facts alleged in the complaint.
        The complaint alleges that this  statement  was  false  when
27       made, and so it survives 12(b)(6) scrutiny.

28

Blecher Collins
Pepperman & Joye

1  Here, the allegations that Defendants are exploiting an illegal merger through

2  deception and duplicity must be accepted as true at this stage.  Defendants' attempt

3  to reshape those allegations should be rejected.

4  **C.  Novation Has Alleged Specific Intent to Monopolize**

5  Defendants' contention that Novation has failed to allege specific intent to

6  monopolize is wrong.  The Complaint recites:

> The root cause of these [Novation's] losses is the illegal
> 2011 merger which has, in turn, led to an unbroken chain
> of events, **producing an anticompetitive scheme
> calculated to eliminate or reduce competition to JG
> Wentworth and its former (but now fake) "competitor"
> Peachtree.**

Compl. ¶ 26 (emphasis added).

A scheme calculated to eliminate or reduce competition from the two

dominant sellers in the market is the equivalent to a scheme to monopolize.

**D.  Novation Has Alleged a Dangerous Probability of Achieving
Monopoly Power**

Novation has alleged that Defendants have a dangerous probability of

achieving monopoly power.  The Complaint alleges:

> The actual and likely continued effect of JG Wentworth's
> acquisition of Peachtree, has substantially lessened and
> **will continue to substantially lessen competition and to
> create a monopoly in….the United States factoring of
> structured settlements**….

Compl. ¶ 32 (emphasis added).

**III.  Novation Has Properly Alleged a Plausible Relevant Product Market,
Which Involves a Fact-Intensive Inquiry**

Antitrust law requires Novation to allege both a product market and

geographic market.  *Newcal*, 513 F.3d at 1045 n.4.  It is well-settled law that market

definition is a quintessential factual issue for the jury to decide.  *Id.* at 1045-46;

*Blecher Collins Pepperman & Joye*

**B C**
**P J**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1002 (9th Cir. 2008);

2  *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1476 (9th Cir. 1997); *Thurman Indus., Inc.*

3  *v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989).  "The relevant

4  market need not be pled with specificity." *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F.

5  Supp. 2d 1119, 1135 (N.D. Cal. 2010).  Because of the fact-intensive inquiries

6  involved, dismissal on relevant market grounds is generally disfavored. *Datel*

7  *Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 997 (N.D. Cal. 2010) (courts

8  must be hesitant to grant a motion to dismiss for failure to plead a relevant market).[4]

> In order to state a valid claim under the Sherman Act, a
> plaintiff must allege that the defendant has market power
> within a "relevant market."  That is, the plaintiff must
> allege both that a "relevant market" exists and that the
> defendant has power within that market.
>
> There is no requirement that these elements of the antitrust
> claim be pled with specificity.  An antitrust complaint
> therefore survives a Rule 12(b)(6) motion unless it is
> apparent from the face of the complaint that the alleged
> market suffers a fatal legal defect.  And since the validity
> of the "relevant market" is typically a factual element
> rather than a legal element, alleged markets may survive
> scrutiny under Rule 12(b)(6) subject to factual testing by
> summary judgment or trial.

*Newcal*, 513 F.3d at 1044-45 (citations and footnote omitted).

A product market is "'composed of products that have reasonable

interchangeability for the purposes for which they are produced—price, use and

qualities considered.'" *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145,

1163 (9th Cir. 2003) (citation omitted).  In defining product markets, courts "must

recognize meaningful competition where it is found to exist." *United States v.*

---

[4] A leading treatise states: "Because the boundaries of the relevant market are
determined by marketplace facts, motions to dismiss directed to the way the relevant
market is defined in the pleadings are often unsuccessful."  1 ABA Section of
Antitrust Law, Antitrust Law Developments 612 (6th ed. 2007).

1  *Cont'l Can Co.*, 378 U.S. 441, 449 (1964).  Under *Twombly*, Novation's alleged

2  product market must merely be plausible.  The relevant product market that

3  Novation has alleged is "the factoring of structured settlement payment rights."

4  Compl. ¶ 16.  The Complaint sets forth the peculiar characteristics of the factoring

5  of structured settlements.  *Id*. ¶¶ 17-19.  Accordingly, Novation's relevant product

6  market effectively alleges that there are no "reasonable product interchangeability"

7  issues.[5]

8       The relevant market definition "can be determined only after a factual inquiry

9  into the 'commercial realities' faced by consumers."  *Kodak*, 504 U.S. at 482

10  (citation omitted).

11       Even assuming a relevant market is broader than factoring of structured

12  settlements, this narrower segment of a broader market can be recognized as a

13  "submarket."  In *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), the

14  Supreme Court held that "within [a] broad market, well-defined submarkets may

15  exist which, in themselves, constitute product markets for antitrust purposes."  *Id*. at

16  325 (citation omitted).  *Brown Shoe* identified several criteria to consider in

17  determining whether a valid submarket exists: unique production facilities,

18  specialized vendors, industry or public recognition of the submarket as a separate

19  economic entity, distinct customers, and sensitivity to price changes.  *Id*.; *Lucas*

20  *Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 768 (9th Cir. 2001).

21  "[I]t is legally permissible to premise antitrust allegations on a submarket.  That is,

22  an antitrust claim may, under certain circumstances, allege restraints of trade within

23  or monopolization of a small part of the general market of substitutable products."

24  *Newcal*, 513 F.3d at 1045.

25

26  _____

27  [5] Direct evidence of cross-elasticity is not necessary as part of this Complaint.  *Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 995 (9th Circ. 1986).  At the

28  pleading stage, Novation's allegations are sufficient.

Blecher Collins
Pepperman & Joye

1    Courts have not hesitated to find "submarkets" even where the use of the
2    product was identical or the products could be substitutes for one another.  *See*
3    *Lucas*, 275 F.3d at 767-68.  Dismissal is generally inappropriate because in
4    assessing a "submarket," the fact-finder is required to analyze "factual" questions
5    such as price differentials, demand elasticity, required maintenance, difference in
6    distribution chains, industry recognition, and supply substitution.  *Geneva Pharms.*
7    *Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 496-99 (2d Cir. 2004) (brand name
8    and generic warfarin sodium found to be separate submarkets despite the fact that
9    they were the same drug and competed to some extent with one another); *Fineman*
10   *v. Armstrong World Indus., Inc.*, 980 F.2d 171, 198-200 (3d Cir. 1992) (submarket
11   consisted of only resilient flooring market even though resilient flooring competed
12   with all other hard surface floor coverings); *Beatrice Foods Co. v. FTC*, 540 F.2d
13   303, 307-09 (7th Cir. 1976) (paint brushes and rollers were in distinct submarkets
14   from aerosols and other spray equipment even though they were interchangeable for
15   end uses, *i.e.* painting); *United States v. Black & Decker Mfg. Co.*, 430 F. Supp. 729,
16   739-40 (D. Md. 1976) (market existed for sale and manufacture of chain saws and
17   within this market was a submarket for chain saws retailing for less than $200);
18   *Grumman Corp. v. LTV Corp.*, 527 F. Supp. 86, 90 (E.D.N.Y. 1981) (separate
19   submarkets for land-based and carrier-based aircraft because of peculiar
20   characteristics and industry and consumer recognition of distinguishing
21   characteristics of products); *Ansell Inc. v. Schmid Labs., Inc.*, 757 F. Supp. 467, 471-
22   76 (D.N.J. 1991) (sale of condoms through retail outlets is a submarket that did not
23   include wholesale sale of condoms).
24       Defendants' suggestion that Novation's relevant market selection is incorrect
25   or inappropriate is not a question suitable for adjudication on a motion to dismiss.
26   "The proper market definition . . . can be determined only after a factual inquiry into
27   the 'commercial realities' faced by consumers."  *Kodak*, 504 U.S. at 481 (citation
28   omitted).  Moreover, market definition and market power are fact issues which the

Ninth Circuit has said need not be pleaded with specificity.  *Newcal*, 513 F.3d at 1045; *Cost Mgmt.,* 99 F.3d at 950; *Datel*, 712 F. Supp. 2d at 997.

Accordingly, Defendants' challenge to relevant market should be rejected at this stage.

## IV.  If the Court Finds the Pleadings Deficient, Novation Requests Leave to Amend the Complaint

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).  This policy is to be applied with "extreme liberality." *See Moss*, 572 F.3d at 972; *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960) (per curiam).  Dismissals with prejudice should occur in only extraordinary cases.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (prejudice to opposing party, bad faith, futility, or undue delay); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  The denial of a motion to amend is reviewed for abuse of discretion.  *DCD Programs*, 833 F.2d at 186; *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984); *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292 (9th Cir. 1983).  "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate a decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citing *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)); *see Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("only if no set of facts can be proved" by amendment to state a claim). If the Court finds the present Complaint legally deficient under Rule 12(b)(6), Novation requests an opportunity to cure the pleadings.

## CONCLUSION

For the reasons set forth herein, Novation respectfully requests that the Court deny Defendants' motion to dismiss in its entirety.  Alternatively, if this Court finds

20

1  Novation's Complaint deficient, Novation respectfully requests leave to file an

2  Amended Complaint.

3

4  Dated:  April 22, 2015                    BLECHER COLLINS
                                             PEPPERMAN & JOYE, P.C.
5

6

7                                    By:        /s/ Maxwell M. Blecher

8                                           Maxwell M. Blecher

9                                           Attorneys for Plaintiff
                                            NOVATION VENTURES, LLC
10
   72691.3
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28