LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | **CV 15-00954 BRO (PJWx)** | Date | May 18, 2015 |
|---|---|---|---|
| Title | **NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL.** | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS)

## ORDER GRANTING MOTION TO DISMISS [17]

Pending before the Court is Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim. (Dkt. No. 17.) After consideration of the papers filed in support of and in opposition to the instant motion, the Court deems this matter appropriate for decision without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, Defendants' motion is **GRANTED**.

### I.   BACKGROUND

#### A. Factual Background

Plaintiff Novation Ventures, LLC is a Delaware limited liability company that is engaged in the business of factoring structured settlement payment rights by buying the right to receive scheduled future payments from settlement recipients who do not wish to or cannot wait years for their annuitized payments. (Compl. ¶ 3.) Defendant The J.G. Wentworth Company, LLC ("J.G. Wentworth") is also a Delaware limited liability company and is, along with its subsidiaries, "by far the largest participant in the factoring of structured settlements." (Compl. ¶ 4.) In August 2011, J.G. Wentworth acquired its largest competitor in the market for the purchase of structured settlement payment rights, Defendant Peach Holdings, LLC ("Peachtree"). (Compl. ¶¶ 5, 7–9.)

Before this merger, J.G. Wentworth funded approximately 40–45% of the structured settlement factoring transactions completed in the United States annually, whereas Peachtree funded 25–30%. (Compl. ¶¶ 7–8.) In an attempt to increase their

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-00954 BRO (PJWx)** | Date | May 18, 2015 |
|---|---|---|---|
| Title | **NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL.** | | |

relative market share, these companies would broadcast television ads and compete against each other "for on-screen 'shelf space' and position in pay-per-click Internet advertising." (Compl. ¶¶ 7–8.) Following the merger, Plaintiff alleges that "a common ownership and management entity[] maintains and promotes both brands, running ads for both JG Wentworth and Peachtree as though they continue to be separate, competitive entities when in fact they are commonly owned and managed." (Compl. ¶ 27.) Plaintiff claims that this merger, in addition to Defendants' allegedly deceptive conduct following the merger, constitutes a violation of both section 7 of the Clayton Act and section 2 of the Sherman Act. (Compl. ¶¶ 32–34.)

   While Google, Inc. ("Google") is not named as a Defendant in this matter, much of Plaintiff's antitrust claims rely on alleged conduct involving Google. For example, the Complaint alleges that Google operates a business called "AdWords," through which, "[e]very moment of every day, commercial advertisers bid to display their ads in the search results shown to those who use the Google online search engine to find information about a designated search term." (Compl. ¶ 12.) Google operates this advertising business "as a dynamic online auction in which competing businesses bid against one another to pay Google a 'per click' fee whenever (a) a Google user seeks information about a designated search term, (b) the advertiser's listing is displayed, and (c) the user 'clicks' on the displayed listing, thereby taking the user to the advertiser's website or phone number." (Compl. ¶ 13.) According to the Complaint, "[t]ypically, individuals (or their advisors) seeking to find a buyer for structured settlement payment rights will search the Internet using Google"; moreover, "only the top listings on the first page of results are likely to be reviewed and 'clicked' on." (Compl. ¶ 22.) As a result, Plaintiff alleges, it is very valuable to be among these first few listings. (Compl. ¶ 13.)

   Plaintiff alleges that "[b]y coordinating their Google AdWords 'pay-per-click' bidding and budgets, JG Wentworth and Peachtree are able to consistently grab two of the top three or four search listing results on many of the keywords used by consumers searching for structured settlement buyers." (Compl. ¶ 23.) According to Plaintiff, this constitutes anti-competitive behavior because it "crowds out competitors and/or drives up the cost of being in second or third position in any given search ranking, making it more difficult and expensive for Novation to be found by potential customers looking for genuinely competing offers," and it "also harms consumers, who are led to believe they

Case 2:15-cv-00954-BRO-PJW Document 23 Filed 05/18/15 Page 3 of 12 Page ID #:155

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-00954 BRO (PJWx) | Date | May 18, 2015 |
|---|---|---|---|
| Title | NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL. | | |

are shopping among competing alternatives, but really are not." (Compl. ¶ 24.) Plaintiff therefore filed the instant antitrust lawsuit to prevent such behavior.

Plaintiff defines the relevant product market in this action as "the factoring of structured settlement payment rights" and the relevant geographic market as the United States of America. (Compl. ¶ 16.) Within this market, Plaintiff alleges that "[t]here are only a handful of companies competing for the factoring of structured settlement payment rights in the United States. Post-merger, JG Wentworth is by far the largest, with a market share of about 75%. Novation has a market share believed to be no more than 7%." (Compl. ¶ 17.) The essence of Plaintiff's claims is that "[t]he actual and likely continued effect of JG Wentworth's acquisition of Peachtree[] has substantially lessened and will continue to substantially lessen competition and to create a monopoly in interstate trade and commerce in the United States factoring of structured settlements." (Compl. ¶ 32.) Plaintiff also alleges that Defendants' merger, "[c]oupled with their subsequent conduct, . . . violate[s] the attempt to monopolize, conspiracy to monopolize, and monopolization clauses of Section 2 of the Sherman Act." (Compl. ¶ 15.)

### B. Procedural History

Plaintiff filed its Complaint on February 10, 2015, naming J.G. Wentworth; Peachtree; JGWPT Holdings, LLC; The J.G. Wentworth Company; JGWPT, Inc.; J.G. Wentworth S.S.C.; and Peachtree Financial Solutions as Defendants. (Dkt. No. 1.) Defendants then filed the instant motion to dismiss on April 6, 2015. (Dkt. No. 17.) Plaintiff opposed this motion on April 22, 2015, (Dkt. No. 19), and Defendants replied on May 4, 2015, (Dkt. No. 20).

## II. LEGAL STANDARD

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

Case 2:15-cv-00954-BRO-PJW Document 23 Filed 05/18/15 Page 4 of 12 Page ID #:156

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-00954 BRO (PJWx) | Date | May 18, 2015 |
|---|---|---|---|
| Title | NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL. | | |

the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.*

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."). But leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## III. DISCUSSION

Defendants have raised several arguments as to why Plaintiff has failed to state a claim, including that Plaintiff has failed adequately to allege an antitrust injury and that Plaintiff has failed to state a violation of section 2 of the Sherman Act. As a preliminary matter, however, Plaintiff contends in opposition that it would not be appropriate to consider these arguments at this stage in the proceedings. Instead, Plaintiff argues that the Court should defer ruling on these claims until summary judgment, at which point the factual record will be more fully developed. Plaintiff even goes so far as to assert that "[n]othing more than notice pleading is required," and that "a complaint need only give the defendant fair notice of the claims and grounds upon which they rest." (Opp'n at 2.) As Defendants argue in reply, however, "[a]t least for the purposes of adequate pleading in antitrust cases, the Court specifically abrogated the usual 'notice pleading' rule . . . , which requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (internal citations omitted) (quoting *Twombly*, 550 U.S. at 555); *accord Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 970–71 (9th Cir. 2008) ("In *Twombly*, at least in antitrust matters, the Supreme Court 'retired' the familiar language

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-00954 BRO (PJWx) | Date | May 18, 2015 |
|---|---|---|---|
| Title | NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL. | | |

derived from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which provided 'the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'").

Moreover, courts regularly dismiss antitrust claims on the grounds raised by Defendants in this motion. *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *12 (N.D. Cal. July 20, 2010) (dismissing antitrust claims under Section 2 of the Sherman Act because they failed to allege sufficient facts to state a claim); *Sahagian v. Genera Corp.*, No. CV 08-7613-GW PJWX, 2009 WL 9504039, at *8 (C.D. Cal. July 6, 2009) (dismissing plaintiffs' antitrust cause of action "because the Complaint fail[ed] to adequately allege that Plaintiffs suffered an antitrust injury"). Indeed, Defendants have compiled in their reply a total of twenty-four district court orders in the Ninth Circuit dismissing antitrust claims pursuant to Rule 12(b)(6) based on *Twombly*'s pleading requirements. (*See* Reply at 2 & n.1.) Suffice it to say that it is both proper and necessary to consider the sufficiency of Plaintiff's antitrust allegations on a motion to dismiss. *See Twombly*, 550 U.S. at 558 ("[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984))).

Defendants raise two primary arguments in their motion. First, they argue that Plaintiff has failed sufficiently to allege antitrust injury as required to demonstrate that it has standing to bring this lawsuit. And second, Defendants contend that Plaintiff has also failed to allege plausible claims under section 2 of the Sherman Act.[1] As discussed below, the Court agrees and therefore **GRANTS** Defendants' motion.

---

[1] Defendants also argue that Plaintiff has failed to plead a viable claim for bid rigging and that Plaintiff has failed to allege a proper relevant market. (Mot. at 22–25.) Plaintiff, however, effectively concedes that it has not adequately pleaded a bid-rigging claim. (Opp'n at 8 n.3.) And because the Court dismisses Plaintiff's Complaint for other reasons, it need not address Defendants' argument regarding Plaintiff's relevant market definition.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-00954 BRO (PJWx)** | Date | May 18, 2015 |
|---|---|---|---|
| Title | **NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL.** | | |

### A. Plaintiff Has Failed to Allege Antitrust Injury

To begin, Defendants argue that Plaintiff's antitrust claims must be dismissed because Plaintiff has failed to plead that it has suffered a cognizable injury. Indeed, in order to have standing to bring an antitrust claim, a plaintiff "must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (emphasis added).[2] "Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). Rather, an antitrust injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be 'the type of loss that the claimed violations . . . would be likely to cause.'" *Brunswick*, 429 U.S. at 489 (alteration in original) (quoting *Zenith Radio Corp v. Hazeltime Research*, 395 U.S 100, 125 (1969)). To establish antitrust injury, the Ninth Circuit has held that a plaintiff must establish four elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (quoting *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir.1999)).

In its opposition, Plaintiff identifies three types of harm that it is has suffered that it contends are cognizable antitrust injuries: "(1) reduction in the vigor of the competitive process; (2) consumer harm in the form of reduced competition and choice; and (3) competitor foreclosure from the market." (Opp'n at 9; *accord* Compl. ¶ 35.) As Defendants argue, however, none of these harms, as alleged in Plaintiff's Complaint, suffices to establish antitrust injury on behalf of Plaintiff.

---

[2] "Antitrust standing" is a distinct inquiry from that of constitutional standing. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983). "Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Id.* "This determination of antitrust standing requires an evaluation of the plaintiff's harm, the alleged wrongdoing by the defendant, and the relationship between them." *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 448–49 (9th Cir. 1985).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-00954 BRO (PJWx)** | Date | May 18, 2015 |
|---|---|---|---|
| Title | **NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL.** | | |

First, Plaintiff argues that it has been injured because Defendants' merger has reduced "the vigor of the competitive process." (Opp'n at 9.) In other portions of its opposition, however, Plaintiff appears to concede that it is not relying on the merger itself to establish its antitrust injury. Plaintiff states, for example, that "Novation does not contend that the acquisition alone caused either antitrust injury or compensable harm." (Opp'n at 7.) Moreover, Plaintiff's argument that it has been *harmed* by a reduction of "vigor in the competitive process" is counter-intuitive. If the merger has benefitted Defendants by reducing the number of competitors in the market (because, according to Plaintiff, Defendants are actually one common entity now), then it has similarly benefitted the other participants in that market by reducing competition for them. As the Third Circuit observed in rejecting a similar argument by a competitor:

> We are struck, moreover, with the fact that the presence of Conoco as a competitor in the marketplace would not serve Alberta's self-interest in the long run. It is curious that Alberta would assert a loss by conduct of Du Pont which, if Alberta is to be credited, reduced the number of suppliers in the marketplace. If that action helps Du Pont as a producer, it inevitably aids Alberta as well as every other producer.

*Alberta Gas Chems. Ltd. v. E.I. Du Pont De nemours & Co.*, 826 F.2d 1235, 1243 (3d Cir. 1987). Accordingly, Plaintiff's argument regarding the alleged reduction in the "vigor of the competitive process" fails to establish antitrust injury.

Second, Plaintiff attempts to rely on harm to consumers "in the form of reduced competition and choice" to establish its own antitrust standing. But while "harm to *consumers* by way of increased prices is the type of injury the antitrust laws were designed to prevent, . . . it is not an injury-in-fact that *competitors* suffer." *Sprint Nextel Corp. v. AT & T Inc.*, 821 F. Supp. 2d 308, 319 (D.D.C. 2011); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582–83 (1986) ("Nor can respondents recover damages for any conspiracy by petitioners to charge higher than competitive prices in the American market. Such conduct would indeed violate the Sherman Act, but it could not injure respondents: as petitioners' competitors, respondents stand to gain from any conspiracy to raise the market price in CEPs."). As the court in *Sprint Nextel* explained in rejecting a similar argument, "[w]hen allegedly anticompetitive behavior has

Case 2:15-cv-00954-BRO-PJW Document 23 Filed 05/18/15 Page 8 of 12 Page ID #:160

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-00954 BRO (PJWx)** | Date | May 18, 2015 |
|---|---|---|---|
| Title | **NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL.** | | |

the effect of either raising market price or limiting output and is therefore harmful to competition, it actually *benefits* competitors by making supracompetitive pricing more attractive. . . . Whether the result of an increase in market concentration by itself, or the oligopolistic price coordination that excessive concentration portends, an increase in market prices alone does not harm competitors. To the contrary, 'You want your competitors to charge high prices.'" 821 F. Supp. 2d at 320 (internal quotation marks, citations, and alterations omitted) (quoting *JTC Petroleum Co. v. Pisasa Motor Fuels, Inc.*, 190 F.3d 775, 778 (7th Cir. 1999) (Posner, J.)). As a result, "[a] competitor in the merging industry ordinarily lacks antitrust standing because that competitor would generally only stand to gain from the increase in prices." *AlliedSignal, Inc. v. B.F. Goodrich Co.*, 183 F.3d 568, 576 (7th Cir. 1999). Plaintiff has identified no reason why this alleged harm to consumers has caused a corresponding injury to Plaintiff.

Finally, Plaintiff argues that it has been injured as a result of being foreclosed from the market. But as Defendants note, Plaintiff has not adequately pleaded that it was actually foreclosed from the market. In paragraph 35 of the Complaint, Plaintiff alleges that it has been "foreclosed from the opportunity of competing in the aforesaid relevant product market and continuing to operate as a competitive force in that market," and that, as a result, Plaintiff "has been, and will continue to be, deprived of the revenues and profits that it would otherwise have earned in the competitive process." (Compl. ¶ 35.) Yet Plaintiff fails to plead any *facts* demonstrating that it has actually been foreclosed from the opportunity of competing in the relevant product market. While Plaintiff alleges in the Complaint that Defendants have "driven up the cost of being in the 1st, 2nd, or 3rd position so as to effectively preclude or minimize the competitive impact of other entrants," (Compl. ¶ 28), Plaintiff does not explain how this *forecloses* it from competing in the market. Plaintiff does not, for example, allege that it attempted to bid on one of the top AdWords listings but was not permitted to do so. In fact, Plaintiff alleges that "JG Wentworth and Peachtree are able to consistently grab two of the top three or four search listing results," (Compl. ¶ 23), but it does not suggest that Plaintiff could not bid for and be awarded one of the other remaining one or two available spots.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-00954 BRO (PJWx)** | Date | May 18, 2015 |
|---|---|---|---|
| Title | **NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL.** | | |

Accordingly, Plaintiff has failed to identify any injury that it has suffered that is of the type that the antitrust laws were designed to prevent.[3] Because Plaintiff has failed to allege antitrust injury—a necessary element of claims brought under both section 7 of the Clayton Act and section 2 of the Sherman Act—Plaintiff lacks standing to bring its antitrust claims. *See Brunswick*, 429 U.S. at 489; *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010). Plaintiff's claims must therefore be **DISMISSED** for this reason alone.

### B. Plaintiff Has Failed to State a Claim Under Section 2 of the Sherman Act

Additionally, Defendants argue that Plaintiff has failed to state a claim for unlawful monopolization under section 2 of the Sherman Act. To state a claim under section 2, Plaintiff must allege that: "(1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury." *Cost Mgmt. Servs., Inc. v. Wash. Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996). And to support a claim for *attempted*

---

[3] Moreover, Plaintiff's claimed injury that it has been "deprived of the revenues and profits that it would otherwise have earned in the competitive process" is not compensable as an antitrust violation because it does not appear to be the result of anti-competitive conduct. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) ("If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal *per se*."). Plaintiff essentially claims that it has been injured because Defendants have driven up the cost of obtaining one of the top four AdWords listing spots, which has effectively priced Plaintiff out of the bidding process. (*See* Compl. ¶ 28.) Yet as Defendants argue, that is not necessarily an antitrust violation. If Plaintiff has suffered lost profits or a loss of market share because it is unable to keep up with price competition, it is because Defendants have made obtaining these desirable spots *more* competitive. As the Supreme Court has noted in rejecting antitrust claims based on price cuts to obtain a larger market share, "the threat of loss of profits due to possible price competition following a merger does not constitute a threat of antitrust injury." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 117 (1986); *accord id.* at 116 ("[I]t is in the interest of competition to permit dominant firms to engage in vigorous competition, including price competition." (quoting *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 729 F.2d 1050, 1057 (6th Cir. 1984))); *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001) ("[R]educed profits from lower prices and decreased market share is not the type of harm Section 4 was meant to protect against."). And Plaintiff does not adequately respond to Defendants' argument that any alleged injury on this basis does not "flow[] from an *anticompetitive* aspect or effect of [Defendants'] behavior." *Pool Water Prods.*, 258 F.3d at 1034.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-00954 BRO (PJWx)** | Date | May 18, 2015 |
|---|---|---|---|
| Title | **NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL.** | | |

monopolization, as Plaintiff appears to allege, Plaintiff must adequately plead: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *Id.* at 949–50. Defendants argue that both theories fail because (1) Plaintiff has not adequately alleged that Defendants have willfully acquired or maintained monopoly power, and (2) Plaintiff has not alleged anticompetitive conduct or specific intent to support its attempted monopoly claim.

### 1. Willful Acquisition or Maintenance of Monopoly Power

First, a necessary element of a claim under section 2 of the Sherman Act is that "the defendant has willfully acquired or maintained" monopoly power, "*as distinguished from* growth or development as a consequence of a superior product, business acumen, or historic accident." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (emphasis added). Accordingly, "the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Id.* "Anticompetitive conduct is behavior that tends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008). And as Defendants argue, it is this anticompetitive *conduct* that Plaintiff has failed to allege adequately.

Plaintiff argues that it has alleged anticompetitive conduct consisting of "JG Wentworth (40% market share) acquiring Peachtree (30% market share) to (1) eliminate its main rival as a competitor and (2) produce a market share with monopoly numbers." (Opp'n at 11.) Plaintiff concedes that the merger alone does not constitute anticompetitive conduct, but then argues that "the Complaint alleges that JG Wentworth and Peachtree are falsely palming off Peachtree as a true independent competitor" to "crowd[] out competitors" and "'drive[] up the cost of' getting to a favorable position where the prospect of getting a consumer call to bid is enhanced." (Opp'n at 11 (quoting Compl. ¶ 23); *accord* Compl. ¶ 27.) Yet Plaintiff does not respond to Defendants' argument that in order for false advertising (as Plaintiff alleges) to constitute exclusionary

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-00954 BRO (PJWx) | Date | May 18, 2015 |
|---|---|---|---|
| Title | NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL. | | |

conduct,[4] it must "overcome a presumption that the effect on competition . . . was *de minimis*." *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997). To overcome this presumption, a plaintiff must demonstrate that "the representations were [1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals." *Id.* Plaintiff has neither alleged these elements in its Complaint nor addressed Defendants' arguments to the contrary in its opposition. And Plaintiff does not respond to Defendants' arguments that (1) bidding on Google AdWords to obtain two of the top search positions is not anticompetitive, and (2) there is nothing anticompetitive about a company maintaining separate brands. Accordingly, the Court finds that Plaintiff has failed to allege anticompetitive conduct as required for Plaintiff's monopolization claim.

### 2. Specific Intent

Second, Defendants contend that Plaintiff has failed to allege specific intent to control prices or destroy competition, as required for an attempted monopolization claim. In opposition, Plaintiff quotes paragraph 26 of the Complaint, in which Plaintiff alleges: "The root cause of these losses is the illegal 2011 merger which has, in turn, led to an unbroken chain of events, producing an anticompetitive scheme calculated to eliminate or reduce competition to JG Wentworth and its former (but now fake) 'competitor' Peachtree." (Compl. ¶ 26.) Plaintiff then argues that "[a] scheme calculated to eliminate or reduce competition from the two dominant sellers in the market is the equivalent to a scheme to monopolize." (Opp'n at 16.) Even accepting this argument as true, however, Plaintiff has still failed to allege *facts* supporting Plaintiff's conclusory allegation of such a scheme. Accordingly, Plaintiff's claim for attempted monopolization fails as well.

---

[4] "Exclusionary conduct refers to practices that unreasonably or unnecessarily impede fair competition; that is, conduct that impairs the efforts of others to compete for customers in an unnecessarily restrictive way." *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1211 (9th Cir. 1997).

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-00954 BRO (PJWx) | Date | May 18, 2015 |
|---|---|---|---|
| Title | NOVATION VENTURES, LLC V. THE J.G. WENTWORTH COMPANY, LLC ET AL. | | |

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is **GRANTED**.  Plaintiff's Complaint is hereby **DISMISSED with leave to amend**.  Any amended complaint must be filed no later than **Monday, June 8, 2015**.

**IT IS SO ORDERED.**

:

Initials of Preparer     rf